UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RECEIVED

2020 JUN 23  PM 1:27

U S DISTRICT COURT SDNY

———————————————————————— x

MICHAEL RAMSAROOP,

                  Plaintiff        DOCKET NO.

    -against-

                                   __COMPLAINT__
                               *Jury Trial Demanded*

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK; PRINCIPAL
SHIRLEY MILLER; and THE UNITED
FEDERATION OF TEACHERS,

                Defendants

———————————————————————— x

PLAINTIFF MICHAEL RAMSAROOP, ("Plaintiff") proceeding Pro Se, as and for his

Summons and Complaint filed to protect his Constitutional rights against the above-captioned

Defendants DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK (henceforth

"DOE), PRINCIPAL SHIRLEY MILLER  (henceforth "Miller"), and the UNITED

FEDERATION OF TEACHERS (henceforth "UFT"), alleges upon knowledge as to his own

facts and upon information and belief as to all other matters:


## **NATURE OF ACTION AND PARTIES**


1.This is a civil action seeking injunctive relief, monetary relief, including past and on-going

economic loss, compensatory and punitive damages for wrongful termination due to violations of

Constitutionally protected rights and procedures given to Plaintiff as a tenured teacher under

Education Law 3020-a, namely to have a proper determination of probable cause before any

charges were filed, and be treated fairly by his Union, the United Federation of Teachers (UFT), as stated in the Collective Bargaining Agreement while he was an employee of the NYC Department of Education. The UFT violated their own procedures in order to "play nice" with the DOE in depriving Plaintiff of his tenure rights and pension benefits, as a recently discovered letter from NYSUT, the legal arm of the UFT, shows. Plaintiff seeks monetary and declaratory relief against Defendants for committing acts with the intent and for the purpose of depriving Plaintiff of property and liberty rights without the procedural due process guaranteed under the Fourteenth Amendment of the Constitution of the United States and the UFT Collective Bargaining Agreement and MOA (2014 and current), and for refusing to or neglecting to prevent such deprivations and denials to Plaintiff.

2. Plaintiff brings this action under, 42 U.S.C. § 1983, Age Discrimination in Employment Act, 29 U.S.C. §721, et seq., Stigma Plus, First and Fourteenth Amendment of the United States Constitution and those parts of the New York State Constitution which similarly apply with like language and together with this Court's pendent jurisdiction over causes of action arising under New York State laws, both common and statutory; New York Labor Law Section 740 (Retaliatory personnel action by employers), New York State Constitution Article 1, Section 6, New York State Executive Law (Human Rights Law) Section 290, et seq., Chapter I, Title 8 of the Administrative Code of the City of New York, Section 8-107(1)(a) (referred to as the Human Rights Law of the City of New York), State laws governing employment and workplace discrimination, collective bargaining agreements and payment of dues, fraud and deceit.

3.Plaintiff was denied a fair arbitration hearing after being served false charges signed by AOHT Principal Shirley Miller a person who was unknown to Plaintiff and who charged him while he was on a Sabbatical, and solely because of malice and bad faith. The UFT stood aside, gave

misleading information before, during, and after Plaintiff's sabbatical and charges were filed. Defendants deliberately, and in bad faith, denied to him his protected rights as a tenured teacher to the mandates of Education Law, Just Cause, and the First Amendment after he was accused of being "incompetent" as a teacher in retaliation against him for filing – and winning – his Grievance Arbitration.

4.  As a result of the joint covert 'approval' of the denial of tenure rights by the DOE and the UFT, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully charged and placed on the Ineligible/Inquiry or "no hire" List.

5. Plaintiff Michael Ramsaroop, at all relevant times herein, was and is a resident of the State of New York, Richmond County. He was a tenured educator employed by Defendant the Department of Education starting in 2001. In September 2016 Plaintiff was charged with "Incompetency" and Defendant Miller found Probable Cause for these charges even though she ad never spoken with or even met Plaintiff. Plaintiff was wrongfully terminated June 28, 2017 in violation of his rights as a teacher for 27 years, tenured for 12 years with the Department of Education, and a member of the UFT since 2001.

6. During all times relevant and material to this Complaint, Defendant New York City Department of Education ("NYCDOE") is a school agency organized under and exiting pursuant to the Education Law of the State of New York, and, for purposes, serves as the public employer of all persons appointed to or assigned by it.  At all relevant times herein, the NYCDOE was a "person" acting under the color of state law pursuant to 42 U.S.C. § 1983. The Headquarters of the NYCDOE is located at 52 Chambers Street, N.Y., N.Y. 10007 in Manhattan.

7. During all times relevant and material to this Complaint Defendant Dr. Shirley Miller was Principal of Academy of Hospitality and Tourism ("AOHT) High School located at 911

Flatbush Ave., in Brooklyn, N.Y. Miller became Principal of AOHT while Plaintiff was out on Sabbatical in the 2015-2016 school year, yet on 9/20/2016 Miller signed her name to the "Notice of Determination of Probable Cause on Education Law §3020-a Charges" without ever meeting or speaking with Plaintiff, who was removed from the school the first day back from his study Sabbatical on September 1, 2016. Thus Miller has no justifiable, rational reason to charge Plaintiff, and according to Education Law §3020-a she had no lawful right to sign her name to a determination of probable cause.

8. The United Federation of Teachers ("UFT") is a "labor organization" to which Plaintiff paid dues as a member in good standing for more than sixteen years. The UFT maintains its principal place of business at 52 Broadway, New York, NY 10004.

## JURISDICTION AND VENUE

9. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 for claims arising under 42 U.S.C. 1983. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions brought pursuant to Defendants' violations of 42 U.S.C. Section 1983, in particular the protections given by the U.S. and New York State Constitutions, Freedom of Speech First Amendment rights and Equal Protection Clause enclosed within the Fourteenth Amendment, as well as State law claims codified in the New York State Constitution and Education Law §3020-a (the "tenure law").

10. This action's venue properly lies in the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the New York City Department of Education is located at 52 Chambers Street, Manhattan. This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§2201 and 2202. This Court has supplemental jurisdiction over Plaintiff's state and city law claims under 28 U.S.C. § 1367.

4

11. This Court has jurisdiction pursuant to hear suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter if, as can be seen here, the union ( United Federation of Teachers, or "UFT") is a State Actor, without respect to the amount in controversy or without regard to the citizenship of the parties.

12. Jurisdiction is specifically conferred on this Court by 42 U.S.C. 1983 and State Action Doctrine giving the UFT the status of State Actor, doing business under color of law in this case. This Court has pendent and supplemental jurisdiction over Plaintiff's state law and city law claims, as the facts that form the basis of the state and city law claims are substantially similar to the facts that form the basis of the federal law claims. At all times relevant herein, Plaintiff was a public employee claiming retaliation under New York Labor Law Section 740 and covered by New York State Civil Service Law § 75-b(1)(b).

## STATEMENT OF FACTS

13. In 1983 Plaintiff was awarded a fully paid college scholarship by the government of Trinidad and Tobago.  In 1986 he successfully completed a Bachelor's degree in earth science at the University of the West Indies (Mona Campus, Jamaica) and in August of 1986  began working as a full time high school earth science teacher ( grades 10,11 ) for the government of Trinidad and Tobago. In 1997 he successfully completed a post graduate diploma in Education at the University of the West Indies (St. Augustine  Campus, Trinidad ).

14.  In May 2001 Plaintiff  was offered a position of employment to become a full time high school earth science teacher in the Brooklyn High Schools district by MS Denise J Hallet (Director of Personnel) through the New York City Department of Education International Teacher Recruitment Initiative. In September 2001 he started at the NYC DOE.

15. Since 2008 Plaintiff has taught at the Academy of Hospitality and Tourism ("AOHT"). He has permanent certification as a grade 7-12 earth science teacher, with an extension for middle school science.

16. Plaintiff was denied his protected due process rights by the Defendant Department starting at the end of the 2013-2014 school year, when Plaintiff refused to change the failing grades of students as demanded by AOHT Principal Adam Breier.  In the absence of a clear school policy and numerical data showing that none of the faculty members had used "averaging ", the principal suggested that Plaintiff use such averaging, but Plaintiff refused as he believed that this was simply a way to help students in their pending graduation year to pass courses that they had failed in the last semester of the 2013-2014 school year. Breier subsequently issued Plaintiff a letter to file for insubordination, showing how angry he was at Plaintiff. Plaintiff grieved the retaliatory letter, and  Breier subsequently in September 2014 retaliated against Plaintiff once again by giving him false and derogatory ratings in his observations.

17. On November 3, 2014, Plaintiff filed an APPR complaint concerning the formal observation he had on November 3, disagreeing with Principal Brier's post-observation evaluation report. On June 15, 2015 Arbitrator Jay Siegel granted Plaintiff his grievance request to remove the observation and ineffective evaluation from Plaintiff's personnel file. Siegel wrote, ".November 3, 2014, observation shall be removed from the Complainant's file and shall not count towards the Complainant's 2014-2015 rating".

18. However in violation of Siegel's ruling and Plaintiff's contractual rights, Breier reported an end-of-year (2014-2015) a Measure of Teacher Performance rating ("MOTP") of "Ineffective" for Plaintiff even though the MOTP data was missing and state and local Measures of Student

Learning (" MOSL") were both " Effective". Principal Breier showed malice by violating Plaintiff's rights to a rating of "N/A" at the end of the 2014-2015 school year, and the UFT did nothing to fix this report nor address the violation of the UFT Contract as well as Plaintiff's rights under the CBA and evaluation standards mandated by New York State Education Department and the NYC DOE.

19. Prior to receiving Arbitrator Siegel's favorable Award, in March 2015 Plaintiff filed for a one-year study sabbatical ( Fall 2015 and Spring 2016) leave through the NYCDOE Solas system. His intention was to pursue additional relevant graduate studies at The State University of New York at Stony Brook in order to improve his pedagogy, especially in classroom management techniques which he had requested from the administration at AOHT but never received.

20. On April  09 2015 Plaintiff received  an email from the director of school renewal (Samantha Alexis) stating that his Sabbatical was not approved by Brincipal Breier because the courses were not rigorous enough. Breier's refusal to approve the Sabbatical was made in bad faith and with malice, and his action is in violation of Plaintiff's rights as well as the UFT contract. Plaintiff requested three Stony Brook SUNY Professors (Timothy Glotch, Yvonne Barbour, and Deanne Rogers) write letters to support the academic rigor of the graduate courses at Stony Brook University.

21. On May 14, 2015 Plaintiff received an email from the Administrative Assistant( Ayesha Benjamin)  to Superintendent Prayor that the Superintendent had made a further review of his Sabbatical, and there was an accompanying attachment for him to sign and return. The attachment, sent directly from Prayor, stated that Plaintiff's Sabbatical was being approved, but  that he must appear for the 3020a charges for which a hearing was being scheduled in the

2015-2016 school year. Prayor further stated that the Sabbatical would not be processed until Plaintiff returned the signed letter. Thus Plaintiff was forced to sign this letter under duress. This letter violates the terms of Plaintiff's rights as stated in the UFT Contract Article 21, and denies Plaintiff his lawful procedural due process tenure rights. Plaintiff requested the assistance of the UFT in objecting to this malicious action, but he received none

22. June 4 2015 Plaintiff received papers informing him that he was charged under Education Law section 3020-a, and on the same day he received a letter from Principal Breier that the Office of Personnel Investigations had applied a "problem code" to his personnel file. According to the letter, Plaintiff was told that he was barred from applying for or working per session activities, after school activities, or coaching activities. The defamatory and harmful destruction to Plaintiff's life and career due to this black mark on his personnel file continues to the present day.

23. On June 8 2015 Plaintiff received an email from the NYCDOE  SOLAS that his Sabbatical was formally processed and approved.

24. On June 15 2015 Plaintiff received a copy of the Seigel Award that was granted in his favor. It  removed the only formal observation he had for the 2014-2-15 school year and Siegal wrote that this observation could not  be used towards the 2014-2015 APPR evaluation. The Defendants never complied with the award and gave Plaintiff an "Ineffective" rating anyway.

25. On June 22 15 Plaintiff met with Principal Brier for his final TIP review meeting. On the second page and towards the very end of the letter the Principal says "As you have applied for and been granted a study sabbatical, I hope that you  endeavor to ensure that you focus on the areas of improvement noted above during your sabbatical". At the time, Plaintiff was not aware that this statement was deceitful and fraudulent, and that Breier never intended on giving

Plaintiff a chance to improve his pedagogy, in violation of Education Law 3020-a, the UFT Collective Bargaining Agreement, and the terms and conditions of Plaintiff's due process rights as a tenured teacher under the NY State and U.S. Constitutions.

26. On August 20, 2015 Plaintiff started his 3020-a after he was on his year Sabbatical. He was represented by NYSUT attorney Mr. Steven Friedman, who "advised" him to sign a stipulation agreeing to a fine of $7000 (to be rapid by payroll deduction over 18 months) and admission of guilt to the charges outlined in the charging document. Plaintiff signed this Settlement under duress, without alternative options and in violation of his contractual rights.

27. On September 1 2016, the first day of the school year after reporting back from his Sabbatical, Plaintiff was expecting to return to work for the 2 years required for all those who go on a 1-year sabbatical ( that is part of the sabbatical agreement). Instead, on the very first day of reporting back to AOHT, Plaintiff was given a letter by the Assistant Principal Luke Fitzgibbon that he had been reassigned to PS007 pending new 3020-a charges. The new principal at AOHT, Shirley Miller, signed off on the finding of probable cause in the second set of 3020a charges. Plaintiff never met this person. Miller became principal of AOHT while Plaintiff was on his Sabbatical. Her signature on the Notice of Determination of Probable Cause for the second set of charges for incompetency are fraudulent and violative of Plaintiff's tenure, property and liberty rights as well as the UFT CBA and State and U.S. Constitutions particularly the Fourteenth Amendment.

27. The service of the new charges on the very day that Plaintiff returned to AOHT shows malice and bad faith by the Defendants and denial of due process. But for the joint approval of the denial of tenure rights by the DOE and the UFT, Plaintiff was wrongfully, maliciously and in bad faith terminated and stigmatized permanently by being wrongfully charged and placed on the

Ineligible/Inquiry or "no hire" List.

28. On 9/25/2016 Plaintiff wrote Superintendents Fred Walsh and Michael Prayor to inquire about the 2014-2015 evaluation with missing MOTP data. Neither Superintendent nor their administrative assistants replied.

29. The UFT did not intervene nor object to the bad faith, malicious prosecution and arbitrary and capricious actions of the Department.

30. From September 8 2018- June 28 2017 Plaintiff reported to PS007 and performed non-teaching duties such as computer network, laptop, desktop and printer maintenance. This is a violation of the UFT Contract, which says that all teachers work on administrative duties aligned to their licenses while reassigned.

31. From February 16, 2017 – May 18, 2017 Plaintiff attended the 3020 hearing on his alleged "incompetence" at the NYC DOE 3020-a hearing office located at 100 Gold Street, 3rd floor, in Manhattan. The Arbitrator on the case was Ira Lobel. Lobel aided witnesses for the NYC DOE clarify their testimony against Plaintiff, did not find Plaintiff credible when he complained about the procedures used by Principal Breier to get him terminated, and in general seemed biased against Plaintiff throughout the hearing. A joint exhibit agreed to by both NYSUT and the DOE was submitted during the hearing of the second 3020 which stated that while on sabbatical Plaintiff took courses relating to pedagogy, but this was not considered by Arbitrator Lobel as part Plaintiff's obvious willingness to improve. Additionally, Lobel claimed that the principal was credible, but it is documented in the Siegel award that the principal was found "deleting and adding lesson specific evidence "after the observation report was issued in 2014. Under cross examination Breier testified that the transcript of the previous day was wrong, yet he was credited with being truthful, credible while Plaintiff was not found to be credible.

32. On June 28 2017 Plaintiff received notification from NYSUT attorney Lori Smith that the Arbitrator (Ira Lobel) had recommended that he be terminated from employment with NYCDOE.

33. On July 7, 2017 Plaintiff filed an Article 75 Appeal of Lobel's decision in the New York State Supreme Court (Index No. 100918/17)   In this Appeal, Plaintiff argued that Lobel's decision was irrational because he overlooked the procedural violations of law and in the UFT contract in the NYC DOE charging process, by saying that Plaintiff was permanently incompetent, and that no amount of remediation would ever improve his pedagogy. But Lobel neglected to address Plaintiff's year-long sabbatical design so that he could improve, and ignored the charges were filed before Plaintiff had spent even one day in the school showing his new knowledge. Also, Lobel found Plaintiff incompetent without any student outcomes to prove it. Lobel based his decision to terminate solely on the basis of Breier's opinions and Miller's wholly invalid determination of probable cause.

34. From October 2017 -2018 Plaintiff applied for about 65 jobs ( 50 with the City of New York, 6 as a geologist with NYS and private Geology firms, 3 as data specialist programmers with Charter Schools, 5 with CUNY). Out of 65 applications, Plaintiff has had three interviews and two short listings. Since 2017 he has accumulated financial losses due to his wrongful termination of more than $400,000, with numerous damages that have not as yet been quantified from emotional distress and career damage due to the Problem Code. None of the Constitutional issues on the First and Fourteenth Amendment violations nor the deprivation of property, liberty and rights under the tenure laws due to Plaintiff's senior standing and his age and salary were brought up during the 3020-a or Article 75 appeal. These issues are ripe for review by this Court.

35. On January 19, 2018 Judge Arlene Bluth denied Plaintiff's Article 75 and granted the Motion To Dismiss submitted by the NYC DOE on the grounds that Plaintiff was not as credible as Breier, and the facts showed that Plaintiff could not improve his pedagogy. Bluth ignored, just as Lobel did, the one-year study Sabbatical that Plaintiff was approved for, and the fact that Plaintiff was served incompetency charges the same day that he returned to AOHT in September 2016. Defendants did not wait to find out if Plaintiff had improved his pedagogy or not, and this is a significant error throughout the decisions made in this case to date.

36. In his Article 75, Plaintiff had argued his due process rights had been violated not only by the AOHT staff and administration in declaring him incompetent for the second 3020-s without finding out if this was so, but Judge Bluth also denied Plaintiff his rights by omitting any mention of the lack of subject matter jurisdiction held by Arbitrator Lobel to hear the charges and decide Plaintiff's case.

37. On or about January 2019 Plaintiff became aware of the ruling in Richmond County Supreme Court by Judge Desmond Green in the Article 75 matter of Rosalie Cardinale v New York City Department of Education (Index no.85165/2017, decided March 29, 2018). Judge Green in Richmond County decided the Article 75 submitted by Cardinale in her favor, saying clearly the very same argument Plaintiff stated in his Article 75: that without a vote by the Executive Session in the Panel For Educational Policy (NYC DOE school board) before charges are served on a Respondent, the Arbitrator does not have subject matter jurisdiction. Green wrote,

"New York State created the public school tenure system guaranteeing continued employment to tenured teachers by statute and therefore created a property right in a tenured teacher's continued employment. (See Education Law§§§ 3012, 3012- a, 3020, *Holt v. Board of Educ. Of Webutuck Cent. School Dist.,* 52 NY2d 625 [1981], *Matter of Abromvich v. Board of Educ. of Cent. School Dist. No. I of Towns of Brookhaven & Smithtown,* 46 NY2d 450 [1979]). Where a property right in continued employment exists, such as New York's tenure system, the recipient of such a right may not be deprived without due process. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 [1985].

New York State guarantees a tenured teacher's due process rights to continued employment by statute requiring that "no [tenured teacher] ... shall be disciplined or removed during a term of employment except for just cause and in accordance with the procedures specified in section three thousand twenty-a of this article or in accordance with alternate disciplinary procedures contained in a collective bargaining agreement ... " *Education Law* § 3020.

The statutory procedural process afforded to teachers with tenure under *Education Law* §3020-a requires:
The filing of charges "in writing and filed with the clerk or secretary for the school district or employing board during the period between the actual opening and closing of the school year for which the employed is normally required to serve. *Education Law§ 3020-a(1)*

"Within five days after receipt of charges, the employing board, in executive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists to bring a disciplinary proceeding against the employee pursuant to this section."

*Education Law* § 3020-a(2).

Where an employing board determines probable cause exists for discipline the tenured teacher shall receive: "a written statement specifying (i) the charges in detail, (ii) the maximum penalty which will be imposed by the board if the employee does not request a hearing or that will be sought by the board if the employee is found guilty of the charges after a hearing and (iii) the employee's rights under this section, shall be immediately forwarded to the accused employee "
*Id.*

Green summarized his conclusion that there was a procedural error of law:

"Hearing Officer Lendino conducted the *Education Law* § 3020-a hearing based on unproven assumptions that the delegations of duties and responsibilities from the office of the Chancellor to subordinate administrators occurred in compliance with the relevant statutory authority." (p. 4)

38. Judge Green therefore agreed with Plaintiff's arguments, unravelling the long history of

unfair procedures used in NYC by the DOE and the UFT to destroy good teachers because

someone did not like him/her.

39. In October 2019 Plaintiff was given a copy of a letter from NYSUT Attorney Keith Gross to a teacher who wanted Gross to argue for a lack of subject matter jurisdiction at her 3020-a. The letter is dated April 23, 2018 and addressed to a teacher who was charged with 3020-a, (SED #32,418). Gross responded to this teacher on the Cardinale case and why he would not bring it up at her hearing.  He wrote that it would be "unethical", as there were so many decisions against Cardinale already made. However he used cases decided *before* March of 2018. On June 1, 2018. This teacher was fired by Arbitrator Mary O'Connell.

40. The Cardinale case shows a pattern and practice of the Defendants' partnership in ignoring tenure law so that any administrator of a school can get anyone fired for any reason. Plaintiff has lost his career, his standing in his community, and all income due to the retaliation reported here.

41. The circumstances and facts in this case show that Defendants' behavior constituted the creation of a hostile work environment based upon Plaintiff's age and seniority at AOHT, and in retaliation for his opposition to scrubbing student grades as well as winning his Grievance against Principal Breier's observation report.

42. The conduct, pattern and practice of evaluating Plaintiff with malice and in bad faith was tacitly agreed to and joined into by the UFT.

43. Defendants' conduct unreasonably interfered with Plaintiff's work performance.

44. Plaintiff was caused to be distressed emotionally by Defendants' discriminatory and malicious conduct.

## FIRST CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### Due Process – Fourteenth Amendment,
### New York Labor Law Section 740
### (42 U.S.C. § 1983/property right)

45. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

46. While acting under color of State Law, Defendants violated Plaintiff's First Amendment and his tenure rights by retaliating against him for exercising his freedom of speech as a citizen with regard to matters of public concern by opposing the unethical changing of grades by the Principal who wanted all students to pass and not get the failing grades that Plaintiff knew they deserved.

47. Defendants, under color of State Law, by allowing the administration of AOHT to violate both the UFT contract for evaluating teachers, and Chancellor's Regulations for charging incompetency, in clear violation of Plaintiff's lawfully mandated rights under the Collective Bargaining Agreement (CBA) as well as the Department's rules and regulations required by the New York State Education Department as Education Law 3020-a(2)(a), denied Plaintiff his rights under the Fourteenth Amendment and New York Labor Law Section 740.

48. As a proximate result of Defendants' retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation, severe emotional distress, mental and physical anguish and suffering, and damage to his professional reputation, in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### Due Process – Fourteenth Amendment
### 42U.S.C. § 1983/Liberty Interest)

49. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein

50. While acting under the color of state law, the NYC DOE constructively terminated Plaintiff's New York City License without providing procedural due process before the deprivation of property and the UFT allowed the violation of procedures to move forward, and terminate Plaintiff.

51. The Plaintiff's claim is one for loss of reputation by being placed on the Problem Code without any recourse to remove his name. The loss of one's reputation can violate the Due Process Clause if the loss of reputation is associated with the deprivation of a federally protected liberty interest, such as government employment. Bd. of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ; Valmonte v. Bane, 18 F.3d 992, 999 (2d Cir. 1994).

52. The loss of reputation without due process of law, in combination with the loss of a more tangible interest, is referred to as a "stigma plus" claim. The "stigma" within a stigma plus claim is the loss of reputation and the "plus" is the loss of a more tangible interest, such as employment. See Velez v. Levy, 401 F.3d 75, 87–88 (2d Cir. 2005) ; Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F.Supp.2d 389, 394–95 (S.D.N.Y. 2009). "Because stigma plus is a species within the phylum of procedural due process claims, the Plaintiff must demonstrate that his liberty interest was deprived without due process of law in addition to proving the deprivation of a liberty interest". Segal v. City of New York, 459 F.3d 207, 213 (2d Cir. 2006).

53. Here, Plaintiff was denied any course of action to remove his name from the 3020-a charges as well as the Problem Code.

54. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

### THIRD CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### CAUSE OF ACTION FOR NEGLIGENCE

55. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

56. While acting under the color of state law, the NYC DOE and UFT in bad faith and with malice, terminated Plaintiff's license without providing procedural due process in terms of opposing the detrimental treatment of Plaintiff before the deprivation of property due to negligence.

57. All Defendants were negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff; such negligence was continuing and cumulative over the period of time referenced herein.

58. Defendants' negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

59. The Defendants, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Plaintiff from his position; among other things: in failing to possess the requisite learning, skill, knowledge and

judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation, code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the contract existing between the New York City Department of Education (NYC DOE) and the United Federation of Teachers (UFT).

60.As a proximate result of Defendants' actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

## FOURTH CLAIM FOR RELIEF

## AS TO DEFENDANT NYC DEPARTMENT OF EDUCATION RETALIATION IN VIOLATION OF NEW YORK STATE CIVIL SERVICE LAW § 75-B

61.Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs as if fully set forth herein.

62.Plaintiff reported violations about federal, city and state law violations by the school administration regarding unethical practices at the school and also grieved and won his grievance against the principal for falsifying the observation report in 2014. In the first instance he was speaking as a private citizen, he was not speaking for himself, on matters of public concern, thereby engaging in a protected activity as defined in New York Civil Service Law § 75- b(2)(a).

63.Defendant had notice that Plaintiff participated in such protected activities.

64. Defendant retaliated against Plaintiff by engaging in adverse "personnel actions" as defined by New York Civil Service Law§ 75-b(l)(d). Specifically, Defendant subjected Plaintiff to a retaliatory hostile work environment, including but not limited to: charging him with baseless Specifications and otherwise taking away his livelihood and job security.

65. As a proximate result of Defendant's retaliatory actions against Plaintiff, Plaintiff has suffered and continues to suffer a loss of past and future income, monetary damages, humiliation severe emotional distress, mental and physical anguish and suffering , and damage to his professional reputation, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### AS TO DEFENDANT NYC DEPARTMENT OF EDUCATION INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

66. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

67. Defendant Department of Education did, with malice and in bad faith, without justification, intentionally harm the Plaintiff by playing a part in seeking to wrongfully terminate him from his employment, and caused him intentional and/or negligent infliction of emotional distress.

68. As a result of the foregoing, Plaintiff did suffer damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### AS TO DEFENDANT UFT
### CAUSE OF ACTION FOR BREACH OF CONTRACT

69. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

70. While acting under the color of state law as a State Actor the UFT constructively terminated Plaintiff's license without providing procedural due process before the deprivation of property.

71. Defendant was negligent and departed from standards of good and accepted practice, of which they had a non-delegable duty to utilize reasonable care and judgment in the performance of their respective responsibilities and obligations with respect to the Plaintiff concurrent with the terms and conditions in the CBA; such negligence was continuing and cumulative over the period of time referenced herein.

72. Defendant's negligence and negligent acts, whether taken singularly or in combination, were a direct and proximate cause of Plaintiff's suffering, mental anguish, and loss of personal dignity, both in the past and continuing in the future.

73. The Defendant, their agents, servants and/or employees were careless and negligent in departing from good and accepted practice in the investigation and monitoring of the unsubstantiated claims made against the Plaintiff; in screening them before taking action against a teacher, for their credibility, veracity, and reliability; and for the removal of the Plaintiff from his position; among other things: in failing to possess the requisite learning, skill, knowledge and judgment ordinarily exercised in investigating and monitoring claims against faculty members; in failing to perform certain procedures, which the reasonably skillful and competent personnel would have so done under the circumstances; and in violating each and every rule, regulation,

code statute or ordinance governing the exercise of reasonable care and due diligence concerning the management, and control of the aforementioned situation, including but not limited to, violating the contract existing between the New York City Department of Education (NYC DOE) and the United Federation of Teachers (UFT).

74. As a proximate result of Defendant's actions against Plaintiff, Plaintiff has suffered monetary damages, a loss of past and future income, severe emotional distress, humiliation, mental and physical anguish and suffering and damage to his professional reputation.

## SEVENTH CLAIM FOR RELIEF

### AS TO ALL DEFENDANTS
### CAUSE OF ACTION FOR CONSTRUCTIVE FRAUD IN CONTRACT

75. Plaintiff repeats and realleges each and every allegation contained above, inclusive with the same force and effect as if more fully set forth herein.

76. Plaintiff signed a contract with Defendant Department of Education starting in 2001.

77. Plaintiff paid dues to the UFT from 2001, and as a paying member he was assured of certain rights and responsibilities that he must abide by, and he complied, to his detriment.

78. Defendants violated their duties and responsibilities toward Plaintiff willingly, knowingly, in bad faith and with malice, with the focus on terminating him because of his filing grievances, age and seniority.

79. Defendants made representations of fact which were untrue and/or recklessly made. Klembczyk v. Di Nardo, 265 A.D.2d 934, 935, 705 N.Y.S.2d 743, (N.Y. App.Div., 4th Dep't 1999).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

21

A. For appropriate compensatory damages against Defendants in an amount to be determined at trial over the losses of $500,000.

B. For appropriate declaratory relief regarding the unconstitutional acts and practices of Defendants;

C. For removal of Plaintiff's name from the Problem Code held in his personnel file at the Division of Human Resources.

D. For nominal damages

E. For such other relief and further relief as may be deemed just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury of all issues triable of right by a jury.

Dated:    June 22, 2020
          South Richmond Hill, N.Y.


          Michael Ramsaroop

Michael Ramsaroop
111-12 103rd Avenue
South Richmond Hill
NY 11419.

Pro Se
500 Pearl St
New York
NY 10007



RECEIVED
JUN 2 4 2020
PRO SE OFFICE



USM5w
SDNY