UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RAMSAROOP,

                              Plaintiff,

                  – against –

THE DEPARTMENT OF EDUCATION OF
THE CITY OF NEW YORK and SHIRLEY
MILLER,

                              Defendants.

**OPINION & ORDER**

20 Civ. 4947 (ER)

R<small>AMOS</small>, D.J.:

 Michael Ramsaroop filed this action *pro se* on June 23, 2020 against the Department of

Education of the City of New York ("NYCDOE"), Shirley Miller, and the United Federation of

Teachers ("UFT").  Doc. 2.  UFT was voluntarily dismissed on February 18, 2021.  Doc. 30.

Ramsaroop amended his complaint on May 6, 2021.  Doc. 38.  Ramsaroop broadly alleges

retaliation and due process violations under federal and state law stemming from his wrongful

termination as a teacher at the Academy of Hospitality and Tourism High School ("the

Academy").

     On May 28, 2021, Defendants filed a motion to dismiss.  Doc. 39.  For the reasons set

forth below, the motion to dismiss is GRANTED.

     **I.     BACKGROUND**

     The following facts, unless otherwise indicated, are based on the allegations in the

Amended Complaint, which the Court accepts as true for purposes of the instant motion.  *See,*

*e.g.*, *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  Ramsaroop worked as a

teacher at the Academy from 2008 until his termination in June 2017.  Doc. 38 ¶¶ 15, 32.  At the

end of the 2013–14 school year, Ramsaroop alleges that he refused to change the failing grades

of several students as demanded by then-principal Adam Breier.  *Id.* ¶ 16.  Breier issued a letter

of insubordination to Ramsaroop, about which Ramsaroop filed a complaint.  *Id.*  Breier then

gave Ramsaroop a "derogatory" performance review, rating him as "ineffective" after observing

him teach a class in September 2014.  *Id.* ¶¶ 16–17.  On November 3, 2014, Ramsaroop filed an

Annual Professional Performance Review ("APPR") complaint, disagreeing with Breier's post-

observation evaluation report.  *Id.* ¶ 17.

In March 2015, Ramsaroop filed for a one-year study sabbatical for the 2015–2016

school year.  *Id.* ¶ 19.  Ramsaroop planned to pursue graduate studies at the State University of

New York at Stony Brook to improve his pedagogy and classroom management techniques.  *Id.*

On April 9, 2015, Ramsaroop received an email from Samantha Alexis, the Director of School

Renewal, stating that his sabbatical was not approved by Breier because the courses were not

sufficiently rigorous.  *Id.* ¶ 20.  However, on May 14, 2015, Ramsaroop received an email from

Ayesha Benjamin, Administrative Assistant to Superintendent Michael Prayor, stating that the

superintendent had further reviewed his request and approved the sabbatical subject to the

submission of a letter, to be signed by Ramsaroop, requiring him to appear for a teacher tenure

hearing regarding § 3020-a charges against him.[1]  *Id.* ¶ 21.  Ramsaroop thus alleges he was

forced to sign the letter requested by Superintendent Prayor under duress.  *Id.*

On June 4, 2015, Ramsaroop was informed that he had been charged under Education

Law § 3020-a.  *Id.* ¶ 22.  On the same day, he received a letter from Breier informing him that

the Office of Personnel Investigations had applied a "problem code" to his personnel file,

---

[1] Pursuant to Education Law § 3020-a, tenured educators may have disciplinary charges filed against them.  The employee may then request a hearing on the charges, to be heard before a hearing officer from the American Arbitration Association who will then issue a written decision with findings of fact, conclusions regarding each charge, and the penalty, if any.  The employee or employing board may then appeal the decision to the New York State Supreme Court.

meaning he was barred from applying for or working certain extracurricular activities for the school.  *Id.*  On June 8, 2015, he received an email from the NYCDOE approving his sabbatical. *Id.* ¶ 23.

On June 15, 2015, Arbitrator Jay Siegel granted Ramsaroop's grievance request to remove the negative performance review and "Ineffective" evaluation rating from his personnel file, noting that the observation "shall not count towards [Ramsaroop's] 2014–2015 rating."  *Id.* ¶ 17.  However, in alleged violation of that ruling, Breier gave Ramsaroop a Measure of Teacher Performance ("MOTP") rating of "Ineffective" at the end of the 2014–15 year.  *Id.* ¶ 18. Ramsaroop believes he was entitled to a rating of "N/A."  *Id.*

On June 22, 2015, Ramsaroop met with Breier for his final Teacher Improvement Plan ("TIP") Review for that school year, in which Breier expressed hope that Ramsaroop would use the sabbatical to focus on areas of improvement noted in the review.  *Id.* ¶ 25.

Ramsaroop's § 3020-a hearing was held on August 20, 2015.  Ramsaroop was represented at the hearing by Steven Friedman, an attorney from the New York State United Teachers union, who advised him to sign a stipulation agreeing to a $7,000 fine and admission of guilt regarding charges involving time and attendance policies.  *Id.* ¶ 26; Doc. 40-2 at 4. Ramsaroop signed the settlement stipulation but alleges that it was "under duress."  Doc. 38 ¶ 26.

Ramsaroop reported back to school after his sabbatical on September 1, 2016.  *Id.* ¶ 27. On the same day, he was given a letter written by Assistant Principal Luke Fitzgibbon informing him that he had been reassigned to another school, Public School 007, pending new § 3020-a charges.  *Id.* ¶ 27.  The new charges alleged behavior constituting "incompetent and/or inefficient service; conduct unbecoming [his] position; conduct prejudicial to the good order, efficiency or discipline of the service; neglect of duty; substantial cause for rending [him] unfit

3

to properly perform his obligation to the service; [and] just cause for termination [and disciplinary action]." Doc. 40-2 at 5–6. The charges generally allege inadequate or ineffective lesson planning and execution and failure to implement directives and recommendations for pedagogical improvement and professional development. *Id.* at 5. Shirley Miller, the new principal at the Academy, signed off on a finding of probable cause on the documents for these new charges, despite the fact that Ramsaroop and Principal Miller had never met. Doc. 38 ¶ 27. Ramsaroop alleges that because there was no vote on probable cause at an Executive Session of the Panel for Educational Policy ("PEP"), he was denied his right to a fair hearing under a neutral arbitrator and was unable to select the arbitrator who would hear the compulsory arbitration. *Id.* ¶ 28.

Ramsaroop worked at Public School 007 from September 8, 2016 to June 28, 2017, performing nonteaching duties such as computer and printer maintenance. *Id.* ¶ 30. The § 3020- a hearing on his alleged "incompetence" took place over nine hearing days from February 16, 2017 to May 18, 2017. *Id.* ¶ 31; Doc. 40-2 at 2. On June 28, 2017, Ramsaroop was informed that Hearing Officer Lobel had recommended his termination. Doc. 38 ¶ 32. Lobel's decision is 34 pages long and explains that the hearing was conducted across nine separate dates, and the parties had a full and fair opportunity to present oral and written evidence and examine witnesses. Doc. 40-2 at 1–2. The detailed decision discusses Ramsaroop's background over the course of his teaching career, his previous history of disciplinary charges, the current charges, the arguments and evidence from the Department of Education, and Ramsaroop's arguments and evidence. Doc. 40-2. Lobel discussed each observation and each witness's testimony before ultimately concluding that, despite Ramsaroop's "knowledge of earth science or his dedication,"

Breier was "far more credible" than Ramsaroop and all of the charges were sustained, with the appropriate penalty being termination. *Id.* at 31–35.

Ramsaroop filed an Article 75 appeal of that decision in New York State Supreme Court on July 7, 2017. Doc. 38 ¶ 33. Justice Arlene Bluth granted defendants' motion to dismiss, denying Ramsaroop's appeal on January 19, 2018. *Id.* ¶ 35.

In this instant action, Ramsaroop claims that Defendants created a hostile work environment based upon his age and seniority at the Academy, and in retaliation for his opposition to falsifying student grades and prevailing in his grievance against Breier's observation report. *Id.* ¶ 41.

## II.    LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Christie's Int'l PLC*, 699 F.3d at 145. However, the Court is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"Because [Ramsaroop] is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Lastly, "[a] district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).

### III.   DISCUSSION

#### A. Extrinsic Materials

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiff[] relied on in bringing suit and that are either in the plaintiff['s] possession or that the plaintiff[] knew of when bringing suit, or matters of which judicial notice may be taken." *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 166 F. App'x 448 (2d Cir. 2015) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). Similarly, a court may consider a *res judicata* or collateral estoppel defense on a Rule 12(b)(6) motion to dismiss "when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498–99 (2d Cir. 2014) (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992) ("[W]hen all relevant facts are shown by the court's own records, of which the

court takes notice, the defense [of *res judicata*] may be upheld on a Rule 12(b)(6)

motion.")); *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 360

(S.D.N.Y. 2014) (noting that in a 12(b)(6) motion where collateral estoppel or *res judicata* is an

issue, "dismissal is appropriate when it is clear from the face of the complaint, and consideration

of matters which the court may take judicial notice of, that the plaintiff's claims are barred as a

matter of law") (internal quotation marks and citations omitted).

Local Civil Rule 12.1 of the Southern District of New York directs represented parties

who move to dismiss by referring to matters outside the pleadings to provide notice to a *pro

se* party that the matter may be treated as a motion for summary judgment and to further explain

what the plaintiff must do to oppose summary judgment.  *See* S.D.N.Y. Local Civil Rule

12.1; *see also Hernandez v. Coffey*, 582 F.3d 303, 308 n.2 (2d Cir. 2009).  Here, Defendants

have attached to their moving papers the § 3020-a decision from Hearing Officer Lobel, Doc. 40-

2, as well as the Article 75 decision on his appeal from the Honorable Arlene P. Bluth, Doc. 40-

3.  In their reply brief, Defendants have also attached the document by which the NYCDOE

Chancellor delegated certain disciplinary authority to principals.  Doc. 44-1 at 2.  Defendants do

not appear to have served the requisite notice on Ramsaroop.  However, the Court need not

convert the motion to one for summary judgment because the Court can take judicial notice of

the extrinsic materials relied upon by Defendants.  The Court also finds that Ramsaroop was not

prejudiced by the absence of this notice because he timely responded to the motion.  *See

Pisciotta v. Unger*, No. 10 Civ. 5451 (RMB) (GWG), 2011 WL 1346809, at *2 (S.D.N.Y. Apr.

4, 2011) (adopting report and recommendation finding that plaintiff was not prejudiced by

defendant's failure to comply with Local Civil Rule 12.1 because plaintiff responded to the

motion and addressed the factual issues therein).  Accordingly, in considering the Defendants'

motion, the Court takes judicial notice of the § 3020-a hearing decision and the state court Article 75 decision "not for the truth of the matters asserted . . . but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). Additionally, the Court takes judicial notice of the Chancellor's letter, Doc. 44-1. Ramsaroop claims that Principal Miller's finding of probable cause in his § 3020-a charges was improper, which brings into issue the "terms and effect of" this document showing that the Chancellor delegated this authority to principals. *See Brown v. Doe*, No. 13 Civ. 8409 (ER), 2014 WL 5461815, at *3 (S.D.N.Y. Oct. 28, 2014); *Kendall v. Cuomo,* No. 12 Civ. 3438 (ALC), 2013 WL 5425780, at *6 (S.D.N.Y. Sept. 27, 2013) (taking judicial notice of a valid court order plaintiff claimed was "false, fake and nonexistent").

## B. Discrimination Claims

In his complaint, Ramsaroop alleges that Defendants discriminated against him in violation of the Age Discrimination in Employment Act (ADEA), New York State Human Rights Law (NYSHRL), and New York City Human Rights Law (NYCHRL) as well as equal protection doctrines in the United States and New York state constitutions.

### 1. Collateral Estoppel

Defendants argue that Ramsaroop is collaterally estopped from asserting discrimination claims in this case because the parties engaged in a § 3020-a hearing and Article 75 appeal. Doc. 41 at 11. "Under New York law, collateral estoppel precludes a plaintiff from contesting in a subsequent action issues clearly raised in a prior proceeding and decided against that party, irrespective of whether the tribunals or causes of action are the same . . . ." *El–Shabazz v. State of New York Comm. on Character & Fitness for the Second Jud. Dep't*, 428 F. App'x 95, 96–97 (2d Cir. 2011). The doctrine of collateral estoppel does not by itself bar any claims—it bars only

the relitigation of "issues."  *See Batyreva v. New York City Dep't of Educ.*, No. 07 Civ. 4544 (PAC), 2010 WL 3860401, at *9 (S.D.N.Y. Oct. 1, 2010), *aff'd*, 464 F. App'x 31 (2d Cir. 2012) (citing *Ali v. Mukasey*, 529 F.3d 478, 489 (2d Cir. 2008)).

The doctrine of collateral estoppel precludes the relitigation of an issue when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits."  *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (quoting *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991)).  "In the application of collateral estoppel with respect to administrative determinations, the burden rests upon the proponent of collateral estoppel to demonstrate the identicality and decisiveness of the issue, while the burden rests upon the opponent to establish the absence of a full and fair opportunity to litigate the issue in prior action or proceeding."  *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 491(N.Y. 1984).

The Second Circuit has held that a "Section 3020–a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect" so long as the standard requirements of collateral estoppel are met.  *Burkybile v. Bd. of Educ. of Hastings–on–Hudson Union Free Sch. Dist.*, 411 F.3d 306, 308 (2d Cir. 2005).  In the case of unreviewed findings of state administrative tribunals, the Supreme Court has held that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986) (internal alterations and citations omitted); *see also Burkybile*, 411 F.3d at 310–12.

Article 75 decisions can also lead to collateral estoppel.  *See, e.g.*, *Batyreva* , 2010 WL 3860401, at \*15 (adopting report and recommendation holding that collateral estoppel barred the plaintiff's claims regarding the findings or fairness of the plaintiff's § 3020-a hearing as the Article 75 court had already reviewed and necessarily decided these); *Blythe v. City of New York*, 963 F. Supp. 2d 158, 175–76 (E.D.N.Y. 2013) (holding that plaintiff's claims relating to lack of probable cause and hearing officer bias in her § 3020-a hearing were barred by collateral estoppel since those claims had been previously decided by the Article 75 court).

A determination as to whether a prior action or proceeding provided a full and fair opportunity to litigate an issue requires consideration of the "realities of the prior litigation, including the context and other circumstances which may have had the practical effect of discouraging or deterring a party from fully litigating the determination which is now asserted against him." *Levich v. Liberty Cent. Sch. Dist.*, 361 F. Supp. 2d 151, 158 (S.D.N.Y. 2004) (citing *Ryan*, 467 N.E.2d at 491).  The factors to be considered include:  the nature of the forum and the importance of the claim in the prior proceeding; the size of the claim; the incentive and initiative to litigate and the actual extent of litigation; the competence and expertise of counsel; the availability of new evidence; the differences in the applicable law; and the foreseeability of future litigation.  *See id.*; *see also Kosakow v. New Rochelle Radiology Associates*, 274 F.3d 706, 734 (2d Cir. 2001).

The Education Law "lays out extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record." *Burkybile*, 411 F.3d at 312 (citing N.Y. Educ. L. § 3020-a(3)(c)).  Section 3020-a authorizes a hearing officer to adjudicate questions of fact, charges, and penalties.  *See* N.Y. Educ. L. § 3020-a(4).

Ramsaroop received a § 3020-a hearing and decision from Hearing Officer Lobel, Doc. 40-2, as well as an Article 75 decision on his appeal of the Lobel's decision from the Honorable Arlene P. Bluth, Doc. 40-3.  Lobel's 34-page decision goes into great detail laying out the allegations against Ramsaroop, summarizing the multiple observations he underwent, evaluations, and follow-up conversations with Breier, and ultimately concludes that Ramsaroop had not taken steps to remedy his deficiencies and that termination was an appropriate penalty. *See* Doc. 40-2.  Justice Bluth then reviewed Lobel's opinion and ultimately dismissed Ramsaroop's appeal on the basis that there was no evidence that Lobel was biased or acted in excess of his power, and that the penalty did not shock the conscience.  *See* Doc. 40-3. Ramsaroop did not raise allegations of discrimination in either action, however.

The Second Circuit has held, albeit in a summary order, that a finding of just cause for termination or discipline resulting from a § 3020–a hearing does not necessarily preclude the possibility that termination was "motivated by unlawful animus" and that a jury could later find that the plaintiff "was also terminated at least in part because of [retaliatory or discriminatory reasons]."  *Leon v. New York City Dep't of Educ.*, 612 F. App'x 632, 634–35 (2d Cir. 2015) (rejecting the district court's finding that the plaintiff's discrimination and retaliation claims were precluded as a result of a § 3020–a hearing and reasoning that "[t]he plaintiff could be successful on the [discrimination or retaliation] claims even if the jury were to accept that there were legitimate reasons for terminating h[er], too") (quoting *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 47 (2d Cir. 2014).

As "[t]here is no indication that the [§] 3020–a hearing [or Article 75 appeal] addressed, much less 'actually decided,' whether the charges leading to [Ramsaroop's] termination were

driven, even in part, by discriminatory or retaliatory intent," *Leon*, 612 F. App'x at 634–35, these claims cannot be dismissed on the basis of collateral estoppel.

### 2. Failure to State a Claim

Defendants further argue that the discrimination claims must be dismissed for failure to plead facts giving rise to an inference of discrimination.  They argue that the complaint has no allegations even suggesting discriminatory animus.

The complaint's only allegation regarding discrimination is that "the acts of Defendants in denying Plaintiff his [c]onstitutional right to a fair hearing by a neutral arbitrator showed deliberate malice, bad faith, discrimination due to Plaintiff's age, and intentional fraud and deceit."  Doc. 38 ¶ 42.  In Ramsaroop's briefing, he further argues that discrimination can be inferred because the only information Principal Miller had about him before signing off on the determination of probable cause was his age.  Doc. 42 at 11.  However, these allegations are conclusory and too speculative to survive a motion to dismiss.  Because the Court is not able "to draw the reasonable inference that the defendant is liable for the misconduct" here, *Iqbal*, 556 U.S. at 678, the discrimination claims must be dismissed.  Accordingly, Defendants' motion to dismiss the federal and state equal protection claims as well as the claims under the ADEA, NYSHRL, and NYCHRL is granted.[2]

## C.  Due Process Claims

Ramsaroop alleges that his due process rights were violated because there was no executive session vote to establish probable cause for his § 3020-a hearing.  Doc. 38 ¶¶ 27–28.

---

[2] The Court therefore need not address Defendants' further argument that the NYCHRL and NYSHRL claims against Principal Miller should be dismissed due to lack of personal involvement, Doc. 41 at 20–21.

Defendants argue that the state and federal due process claims should be dismissed.  Doc. 43 at 12.[3]

New York courts have made clear that "there is no longer a requirement to have a majority vote of the board of education due to the later-enacted Education Law § 2590 that vested authority in the Chancellor in place of the board of education to delegate said authority to superintendents and others he or she deems appropriate."  *In re Giscombe v. New York City Dep't. of Educ.*, No. 100595/13, 2014 WL 2860456 (N.Y. Sup. Ct. June 13, 2014) (citing *Matter of Munoz v. Vega*, 756 N.Y.S.2d 47 (N.Y. App. Div. 2003)).  Defendants have submitted the document by which the Chancellor delegated this authority to principals.  Doc. 44-1 at 2.

Due process only requires that tenured public employees receive "oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985); *accord Ingber v. New York City Dep't of Educ.*, No. 14 Civ. 3942 (JMF), 2014 WL 6888777, at *4 (S.D.N.Y. Dec. 8, 2014).  Ramsaroop's complaint reflects that he was provided with such notice and opportunity to be heard.  *See* Doc. 38 ¶¶ 22, 26–27, 31.  He is not entitled to a probable cause vote nor selection of an arbitrator, and his citations to *Cardinale v. New York City Dep't of Educ.*, No. 85165/2017 (Sup. Ct. Richmond Cnty. Mar. 29, 2018) are simply unavailing.  *See Green v. Dep't of Educ. of City of New York*, No. 18 Civ. 10817 (AT) (GWG), 2019 WL 3432306, at *8–9 (S.D.N.Y. July 31, 2019), *report and recommendation adopted*, 2019 WL 4622077 (S.D.N.Y. Sept. 23, 2019); *see also Adams v. New York State Educ. Dep't*, 752 F.

---

[3] Although generally courts disregard arguments made for the first time in a reply, "the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument."  *Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009), *aff'd*, 374 F. App'x 71 (2d Cir. 2010) (citing *Ruggiero v. Warner–Lambert Co.*, 424 F.3d 249 (2d Cir. 2005)).  Because Ramsaroop has responded to the due process arguments raised in reply, Doc. 45, the Court will consider Defendants' arguments regarding dismissal of the due process claims.

Supp. 2d 420, 456–57 (S.D.N.Y. 2010), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d

Cir. 2012).  Accordingly, Defendants' motion to dismiss the due process claims is granted.[4]

### D. Retaliation Claims

Defendants argue that Ramsaroop's retaliation claims[5] should be dismissed for failure to

state a claim.

"Government employers, like private employers, need a significant degree of control over

their employees' words and actions" to ensure that employees do not "contravene governmental

policies or impair the proper performance of governmental functions."  *Garcetti v. Ceballos*, 547

U.S. 410, 418–19 (2006).  A government entity in the form of an "employer charged with

providing such essential services as public safety and education, rather than a sovereign

governing its citizens, . . . has greater leeway under the Constitution to control employees'

speech that threatens to undermine its ability to perform its legitimate functions."  *Jackler v.

Byrne*, 658 F.3d 225, 234 (2d Cir. 2011) (internal quotation marks and citation omitted).[6]

While government employees have diminished speech rights as compared with private

citizens, "a public employee does not relinquish First Amendment rights to comment on matters

of public interest by virtue of government employment."  *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir.

2000) (quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983)).  Accordingly, in First Amendment

---

[4] *See Algarin v. New York City Dept. of Correction*, 460 F. Supp. 2d 469, 478 (S.D.N.Y. 2006), *aff'd*, 267 F. App'x 24 (2d Cir. 2008) (because the federal and New York constitutional rights to due process are "virtually coextensive," a finding that plaintiff's federal due process rights were not violated "dictates the conclusion that plaintiff's parallel rights under the New York State Constitution were also not infringed.").

[5] Defendants do not specify which claims they believe are "retaliation claims," but appear to only discuss claims under the First Amendment and New York constitution.  Therefore, the Court does not address Ramsaroop's retaliation claims under NYLL § 740 or Civil Service Law § 75-b in this section.

[6] Claims of retaliation for the exercise of free speech under Article I, § 8 of the New York State Constitution are governed by the same principles applicable to First Amendment claims.  *Dotson v. Farrugia*, 11 Civ. 1126 (PAE), 2012 WL 996997, at *9 (S.D.N.Y. Mar. 26, 2012).

public employee freedom of speech cases, courts must achieve a balance between the interest of the public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Courts employ a two-step approach to evaluate whether the First Amendment protects employee speech from retaliation.  First, the court inquires "whether the employee spoke as a citizen on a matter of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citation omitted).  If the answer to this question is no, then "the employee has no First Amendment cause of action based on . . . [his] employer's reaction to the speech." *Garcetti*, 547 U.S. at 418.  If the answer is yes, the court must then decide "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Ruotolo*, 514 F.3d at 188 (internal quotation marks and citation omitted); *see also Garcetti*, 547 U.S. at 418.

The first factor, "whether the employee spoke as a citizen on a matter of public concern," consists of two subcomponents:  "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler*, 658 F.3d at 235.  Speech is of public concern if it relates to political, social, or other community concerns, rather than an employee's personal concerns. *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (citing *Connick*, 461 U.S. at 146); *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (same).  Generally, "discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern;" if the government entity cannot show that such speech would impact or disrupt the government employer's functions, then it may receive First Amendment protection. *See Harman v. City of New York*, 140 F.3d

111, 118 (2d Cir. 1998) (citation and internal punctuation omitted).  Matters of public concern

also include "speech aimed at uncovering wrongdoing or breaches of the public trust."  *Wrobel v.*

*Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir.

1993)).

 Importantly, however, "when public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications from employer discipline."  *Garcetti*, 547

U.S. at 421; *see also Healy v. City of N.Y. Dep't of Sanitation*, 286 F. App'x 744, 745–46 (2d

Cir. 2008) (holding that speech is not protected where it "ar[i]se[s] in the course of . . . official

job duties.").  The Second Circuit has held that determining whether the employee's speech "is

on a matter of public concern" is to be determined by the court as "a question of law."  *Jackler*,

658 F.3d at 235 (citing *Connick*, 461 U.S. at 148 n.7).  While "[t]here is no categorical

approach," courts evaluate the "content, form, and context of a given statement[.]"  *Norton v.*

*Breslin*, 565 F. App'x 31, 33–34 (2d Cir. 2014) (quoting *Johnson*, 342 F.3d at 112).

 In the instant case, Ramsaroop alleges in the complaint that Defendants retaliated against

him by terminating him after he filed and won his grievance arbitration against Breier.  Doc. 38

¶ 3.  In his memorandum in opposition to the motion, Ramsaroop also alleges that his initial

action of refusing to modify students' grades constitutes speaking out as a private citizen on a

matter of legitimate public concern, and Breier retaliated against him by then giving him low

ratings.  Doc. 42 at 6.

 These conclusory allegations do not come close to establishing that he was speaking on a

matter of public concern, as his grievance process related solely to his employment and thus

could not be protected speech subject to constitutional protections against retaliation.  *See*

*Garcetti*, 547 U.S. at 421; *see also Healy*, 286 F. App'x at 745–46.  As to the argument that he was retaliated against because he refused to change the students' grades, looking at the "content, form, and context" of the statement, *Norton*, 565 F. App'x at 33–34, the Court finds that Ramsaroop has not sufficiently alleged that he was speaking as a private citizen on a matter of public concern.  Again, Ramsaroop was speaking about a matter regarding his employment and has not otherwise explained how this is a matter of public concern.  For these reasons, his constitutional retaliation claims must be dismissed.

### E.  State Law Claims

Defendants argue that Ramsaroop's state law claims are barred by the statute of limitations.[7]  Doc. 41 at 15.  Alternatively, they argue that the state law claims are barred for failing to file a notice of claim.  *Id.*

### 1.  Statute of Limitations

Claims alleging illegal workplace discrimination against an educational institution such as the NYCDOE must be brought within the one-year statute of limitations.  New York Education Law § 3813(2-b); *Springs v. Bd. of Educ.*, No. 10 Civ. 01243 (RJH), 2010 WL 4068712, at *2 (S.D.N.Y. Oct. 14, 2010).  However, actions against individually named defendants such as principals—with the exception of certain statutory special schools—must be brought within the more general three-year statute of limitations.  *Fierro v. City of New York*, 591 F. Supp. 2d 431, 447 (S.D.N.Y. 2008) (plaintiff's claims against the school principal are not barred by one-year statute of limitations because the principal "is not an officer within the meaning of section 3813"), *rev'd on other grounds*, 341 F. App'x 696 (2d Cir. 2009).

---

[7] The Court interprets this to refer to Ramsaroop's claims under NYCHRL, NYSHRL, Section 75-b, and tort claims including those for intentional and/or negligent infliction of emotional distress, negligence, and fraud. Defendants do not argue that the NYLL claim should be dismissed on this basis.

Ramsaroop's employment was terminated in June 2017, Doc. 38 ¶ 32, and the decision was upheld in the Article 75 proceeding on January 19, 2018, Doc. 40-3. Ramsaroop did not commence this action until June 23, 2020. Doc. 2. Therefore, the state law claims against the NYCDOE, but not against Principal Miller, are time-barred and must be dismissed.

   *2. Notice of Claim*

New York Education Law § 3813 requires potential plaintiffs to file a notice of claim with the governing body of the applicable school district within 90 days of claim accrual before commencing a lawsuit. This specifically applies to all claims "against any teacher or member of the supervisory or administrative staff or employee where the alleged tort was committed by such teacher or employee acting in the discharge of his duties within the scope of his employment . . . ." N.Y. Educ. L. § 3813(2). Notice of claim requirements "are construed strictly by New York state courts," and failure to comply with these requirements "ordinarily requires a dismissal for failure to state a cause of action." *Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793–94 (2d Cir. 1999) (internal quotation marks and citations omitted). Here, Ramsaroop does not allege compliance with § 3813's notice of claim requirement in the Amended Complaint nor in his briefing. While he does argue that he has provided sufficient notice of his claim through his complaint, Doc. 42 at 34–35, this does not satisfy § 3813's strict requirements. Therefore, the claims against Principal Miller, including the state claim under New York Civil Service Law § 75-b and tort claims for intentional and/or negligent infliction of emotional distress, negligence, and fraud, must be dismissed.[8]

---

[8] Although the NYCHRL and NYSHRL claims are dismissed for failure to state a claim and the state claims against NYCDOE were dismissed above as time-barred, they would also be dismissed due to failure to serve notice of claim as explained here. Additionally, since the Court is dismissing the Civil Service Law § 75-b claim for failure to provide notice, *see Moore v. Middletown Enlarged City Sch. Dist.*, 871 N.Y.S.2d 211 (N.Y. App. Div. 2008) (affirming dismissal of a § 75-b claim for failure to serve timely notice), the Court will not address Defendants' alternative arguments as to why the § 75-b claim should be dismissed, Doc. 41 at 16–17.

### F.  NYLL Section 740

Defendants also move to dismiss the NYLL § 740 claim, arguing that this section does not apply to public employers.  Doc. 41 at 16.  It is clear that "this state law does not apply to public employers."  *Hawkins v. New York State Off. of Mental Health*, No. 17 Civ. 649 (NSR), 2019 WL 4520801, at *7 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 845 F. App'x 9 (2d Cir. 2021); *see also Tamayo v. City of New York*, No. 02 Civ. 8030 (HB), 2004 WL 137198, at *7 (S.D.N.Y. Jan. 27, 2004), *adhered to in part on reconsideration*, No. 02 Civ. 8030 (HB), 2004 WL 725836 (S.D.N.Y. Mar. 31, 2004) (Section 740 claim not reconsidered).  Accordingly, Defendants' motion to dismiss the NYLL § 740 claim is granted.

### G.  Negligent and Intentional Infliction of Emotional Distress

Defendants first argue that a claim for intentional infliction of emotional distress cannot be brought against NYCDOE as a governmental entity.  Doc. 41 at 17.  "It is well-settled that public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity."  *Lauer v. City of New York*, 659 N.Y.S.2d 57 (N.Y. App. Div. 1997) (collecting cases); *see also Noel Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS), 2012 WL 12886971, at *6 (S.D.N.Y. Mar. 21, 2012) (dismissing IIED claim against the town of Greenburgh).  Therefore, the IIED claim against NYCDOE must be dismissed.

Defendants next argue that an IIED claim against Principal Miller is time-barred.  Doc. 41 at 18.  IIED claims are subject to a one-year statute of limitations.  *Teller v. Galak*, 80 N.Y.S.3d 106, 108 (N.Y. App. Div. 2018) (citing N.Y. C.P.L.R. § 215(3)).  As explained above, Ramsaroop's employment was terminated in June 2017, Doc. 38 ¶ 32, and the decision was upheld in the Article 75 proceeding on January 19, 2018, Doc. 40-3.  Ramsaroop did not

commence this action until June 23, 2020.  Doc. 2.  Therefore, the IIED claim is time-barred and must be dismissed.

Defendants also argue that the negligent infliction of emotional distress ("NIED") claim is time-barred.  A claim for negligent infliction of emotional distress is subject to a three-year statute of limitations.  *See* N.Y. C.P.L.R. § 214; *AB ex rel. EF v. Rhinebeck Cent. Sch. Dist.*, 361 F. Supp. 2d 312, 317 (S.D.N.Y. 2005).  Here, Ramsaroop alleges he received notice of his recommendation of termination on June 28, 2017.  Doc. 38 ¶ 32.  Since the complaint was filed on June 23, 2020, Doc. 2, his claim falls within the three-year statute of limitations and may not be dismissed for that reason.

However, Defendants further argue that Ramsaroop has failed to state a claim for negligent infliction of emotional distress.  Under New York law, to state a claim for either intentional or negligent infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct; (2) a causal connection between the conduct and the injury; (3) and severe emotional distress.  *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001); *Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 297–98 (S.D.N.Y. 2015).  To satisfy the first prong, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Lee v. Sony BMG Music Ent., Inc.*, 557 F. Supp. 2d 418, 426 (S.D.N.Y. 2008) (quoting *Murphy v. Am. Home Prods., Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983)).  Here, Ramsaroop alleges a series of allegedly unwarranted disciplinary actions, observations, and negative ratings resulting in his termination.  Such allegations do not rise to the level of "utterly intolerable" action sufficient to state a claim for negligent infliction of emotional distress.  *See*

*Krzesaj v. New York City Dep't of Educ.*, No. 16 Civ. 2926 (ER), 2017 WL 1031278, at *13 (S.D.N.Y. Mar. 15, 2017) (dismissing NIED claim alleging similar facts).

    Accordingly, Defendants' motion to dismiss the intentional and negligent infliction of emotional distress claims is granted.

### H.  Breach of Contract

    Defendants argue that the claim for breach of contract must be dismissed because plaintiff is not a party to the contract between NYCDOE and UFT, Ramsaroop's bargaining unit. Doc. 41 at 19–20.  It is settled that only the union can initiate a breach of contract claim on this contract.  *See Biehner v. City of New York*, No. 19 Civ. 9646 (JGK), 2021 WL 878476, at *7 (S.D.N.Y. Mar. 9, 2021) (dismissing breach of contract claim because teacher was not a party to the contract between NYCDOE and UFT); *see also Berlyn v. Bd. of Educ. of E. Meadow Union Free Sch. Dist.*, 435 N.Y.S.2d 793, 794 (N.Y. App. Div. 1981) ("A union member has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union."), *aff'd*, 433 N.E.2d 1278 (N.Y. 1982).  Ramsaroop thus lacks standing to assert this breach of contract claim.  *See Cummings v. City of New York*, No. 19 Civ. 7723, 2020 WL 882335 (CM) (OTW), at *14 (S.D.N.Y. Feb. 24, 2020).  Accordingly, the motion to dismiss the breach of contract claim is granted.

### I.  Leave to Amend

    Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Second Circuit has instructed courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176,

183 (2d Cir. 2009)).  In *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, the Second

Circuit reaffirmed the "liberal spirit" of Rule 15 and counseled strongly against the dismissal of

claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of

those claims.  797 F.3d 160, at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214

(2d Cir. 2011) (per curiam)).

Here, because this is the Court's first opportunity to highlight the precise defects of

Ramsaroop's pleading and it is not yet apparent that another opportunity to amend would be

futile, the Court will permit him to replead his federal and state equal protection claims as well as

the claims under the ADEA, NYSHRL, and NYCHRL, and his retaliation claims under the First

Amendment and New York state constitution.

However, it would be futile for Ramsaroop to amend his claims under NYLL § 740 as

well as his claims against the NYCDOE alleging intentional and negligent infliction of emotional

distress, negligence, fraud, and breach of contract, as these claims are all either time-barred or

brought by or against an improper party.  Additionally, it would be futile for Ramsaroop to

amend his due process claims as well as his claims against Principal Miller alleging intentional

and negligent infliction of emotional distress, negligence, fraud, and breach of contract, as these

claims do not satisfy § 3183's strict notice requirements.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.  Ramsaroop may file an amended complaint, if at all, by March 8, 2022.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 39.

It is SO ORDERED.

Dated:   February 8, 2022
         New York, New York

_____
              Edgardo Ramos, U.S.D.J.