UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL RAMSAROOP,

                              Plaintiff,

        – against –

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                              Defendant.

**OPINION & ORDER**

20-cv-4947 (ER)

Ramos, D.J.:

Michael Ramsaroop filed this action *pro se* on June 23, 2020, against the Department of Education of the City of New York ("DOE"), Shirley Miller, and the United Federation of Teachers ("UFT"), alleging various claims stemming from his wrongful termination from the Academy of Hospitality and Tourism High School ("the Academy"). Doc. 2. UFT was voluntarily dismissed on February 18, 2021. Doc. 30. Ramsaroop amended his complaint on May 6, 2021. Doc. 38. The DOE and Miller filed a motion to dismiss on May 28, 2021. Doc. 39. On February 8, 2022, the Court granted the motion to dismiss in its entirety, but it permitted Ramsaroop to replead some of his claims. Doc. 49.

Ramsaroop filed his Second Amended Complaint ("SAC") on March 8, 2022, naming the DOE as the only defendant. Doc. 50. On May 18, 2022, the DOE filed a motion to dismiss the SAC in its entirety and with prejudice. Doc. 60.

For the reasons set forth below, the DOE's motion to dismiss with prejudice is GRANTED.

## I.    BACKGROUND

### A.  Factual Background

The facts of this case are described in detail in the Court's February 8, 2022 Opinion and Order granting Defendant's motion to dismiss (the "February 8 Order"),

familiarity with which is assumed.  *See* Doc. 49.  For present purposes, the Court

provides a summary of the facts based on the allegations in the SAC, which the Court

accepts as true for purposes of the instant motion.  *See, e.g.*, *Koch v. Christie's Int'l PLC*,

699 F.3d 141, 145 (2d Cir. 2012).

Ramsaroop was employed by the DOE from September 2001 until his termination

in June 2017.  Doc. 50 ¶¶ 11, 14-15, 32.  He joined the Department as a high school earth

sciences teacher through the Department's International Teacher Recruitment Initiative,

and he subsequently received tenure.  *Id.* ¶ 14.  In 2008, he began teaching at the

Academy.  *Id.* ¶ 15.

At the end of the 2013-2014 school year, Ramsaroop refused to comply with an

order from the Academy's Principal, Adam Breier, to change the failing grades of several

students in one of his classes.  *Id.* ¶ 16.  In response, Breier issued him a letter of

insubordination.  *Id.*  Thereafter, Breier gave Ramsaroop a "derogatory" performance

review, rating him as "ineffective" after observing him teach a class in September 2014.

*Id.* ¶ 16-17.  Ramsaroop believed he was entitled to a rating of "N/A."  *Id.* ¶¶ 18, 24.  On

November 3, 2014, Ramsaroop filed an Annual Professional Performance Review

("APPR") complaint, challenging the findings in Breier's post-observation evaluation

report and requesting the rating be changed.  *Id.* ¶ 17.

In March 2015, Ramsaroop filed a request for a one-year sabbatical for the 2015-

2016 school year.  *Id.* ¶ 19.  He planned to pursue graduate studies at the State University

of New York at Stony Brook to improve his pedagogy and classroom management

techniques, as well as to escape the hostile work environment at the Academy.  *Id.*  On

April 9, 2015, Ramsaroop learned that Breier had denied his request for the sabbatical

because the courses he planned to take were not sufficiently rigorous.  *Id.* ¶ 20.

Ramsaroop then asked three Stony Brook professors to write letters to Breier to explain

the academic rigor of the graduate courses he intended to pursue.  *Id.*

On May 14, 2015, Ramsaroop received an email from Ayesha Benjamin, Administrative Assistant to DOE Superintendent Michael Prayor, stating that the superintendent had further reviewed Ramsaroop's request and decided to approve his sabbatical. *Id.* ¶ 21. This approval, however, was conditioned on Ramsaroop's appearance at a teacher tenure hearing, to be scheduled during the 2015-2016 school year, to address forthcoming New York Education Law § 3020-a charges against him involving time and attendance violations.[1] *Id.*; Doc. 61 at 8–9. Ramsaroop also was also instructed to sign and submit a letter agreeing to make that appearance. Doc. 50 ¶ 21. Accordingly, Ramsaroop alleges that he was forced to sign the letter agreeing to appear under duress. *Id.*

On June 4, 2015, Ramsaroop was formally notified that he was charged under § 3020-a for time and attendance violations. *Id.* ¶ 22; Doc. 61 at 8–9. On the same day, he received a letter from Breier informing him that the Office of Personnel Investigations had applied a "problem code" to his personnel file, barring him from applying for or working on certain extracurricular activities for the school. Doc. 50 ¶ 22. Ramsaroop alleges the harm caused by this "black mark" on his file continues to the present day. *Id.* On June 8, 2015, Ramsaroop received an email from the DOE approving his sabbatical. *Id.* ¶ 23.

On June 15, 2015, Arbitrator Jay Siegel granted Ramsaroop's November 2014 request to have the negative performance review and "Ineffective" evaluation rating removed from his personnel file, noting that the observation could not be used towards Ramsaroop's 2014-15 APPR evaluation. *Id.* ¶ 24. Nonetheless, despite that ruling,

---

[1] Tenured educators may have disciplinary charges filed against them pursuant to Education Law § 3020-a. The employee may then request a hearing on the charges, to be heard before a hearing officer from the American Arbitration Association, who will then issue a written decision with findings of fact and conclusions of law regarding each charge, and the penalty, if any. The employee or employing board may then appeal the decision to the New York State Supreme Court.

Breier still gave Ramsaroop a Measure of Teacher Performance ("MOTP") rating of "Ineffective" at the end of the 2014-15 school year. *Id.* ¶¶ 18, 24.

On June 22, 2015, Ramsaroop met with Breier for his final Teacher Improvement Plan ("TIP") Review for the 2014-2015 school year, in which Breier expressed hope that Ramsaroop would use the sabbatical to focus on areas of improvement noted in the review.[2] *Id.* ¶ 25.

Ramsaroop's § 3020-a hearing was held on August 20, 2015. *Id.* ¶ 26. He was represented at the hearing by Steven Friedman, an attorney from the New York State United Teachers union, who advised him to sign a stipulation agreeing to a $7,000 fine and an admission of guilt regarding time and attendance policy violations. *Id.* ¶ 26; Doc. 40-2 at 4. Ramsaroop signed the stipulation, but alleges that he did so "under duress," as he was neither aware of nor offered any alternative. Doc. 50 ¶ 26.

Ramsaroop reported back to the Academy on September 1, 2016, after completing his sabbatical. *Id.* ¶ 27. That day, he was given a letter written by Assistant Principal Luke Fitzgibbon ("Fitzgibbon letter") informing him that he had been reassigned to another school, Public School 007, pending new § 3020-a charges. *Id.* The new charges alleged behavior constituting "incompetent and/or inefficient service; conduct unbecoming [his] position; conduct prejudicial to the good order, efficiency or discipline of the service; neglect of duty; substantial cause for rendering [him] unfit to properly perform his obligation to the service; [and] just cause for termination [and disciplinary action]." *See* Doc. 40-2 at 5-6. The charges generally alleged inadequate or ineffective lesson planning and execution and failure to implement directives and recommendations for pedagogical improvement and professional development. *Id.* Shirley Miller, the new Principal at the Academy, signed off on a finding of probable cause for these new charges, even though Ramsaroop and Miller had never met. Doc. 50 ¶ 27.

---

[2] The pleadings do not indicate when Ramsaroop was placed on the TIP.

According to Ramsaroop, the fact that the DOE brought the new § 3020-a charges against him before he had an opportunity to demonstrate improvements in his pedagogy shows that Breier never intended to give him a chance to do so, contrary to Breier's statements in Ramsaroop's TIP for the 2014-15 year (that he hoped Ramsaroop would use the sabbatical to focus on areas of improvement noted in the review).  *Id.* ¶ 25.  He thus claims that Breier's statements were "deceitful and fraudulent," in violation of § 3020-a, the UFT Collective Bargaining Agreement, and the due process provisions of the New York State and United States constitutions.  *Id.* ¶ 25.  Further, he alleges that Miller's signature on the Notice of Determination of Probable Cause for the new charges was fraudulent and in violation of his property and liberty rights guaranteed by the Fourteenth Amendment and the New York State Constitution.  *Id.* ¶ 27.  Additionally, Ramsaroop contends that because there was no vote on probable cause at an Executive Session of the Panel for Educational Policy ("PEP"), he was denied his right to a fair hearing under a neutral arbitrator, in violation of § 3020-a.[3]  *Id.* ¶ 28.  He also contends that, unlike educators outside of New York City, he was unable to select the arbitrator who would hear the compulsory arbitration.  *Id.*

Pursuant to the instructions laid out in the Fitzgibbon letter, Ramsaroop worked at Public School 007 from September 8, 2016, to June 28, 2017.  *Id.* ¶ 30.  He performed nonteaching duties such as computer and printer maintenance.  *Id.*  Ramsaroop alleges this constitutes a violation of the UFT Contract, which provides that, while reassigned, all teachers work on administrative duties aligned to their licenses.  *Id.*

---

[3] The February 8 Order explained that due process no longer requires an executive session vote of the board of education to establish probable cause for a § 3020-a hearing.  Doc. 49 at 12-13.  New York Courts have ruled that the enactment of Education Law § 2590 vested authority in "the Chancellor in place of the board of education to delegate said authority [to make § 3020-a hearing probable cause determinations] to superintendents and others he or she deems appropriate."  *Id.* (citing *In re Giscombe v. New York City Dep't. of Educ.*, No. 100595/13, 2014 WL 2860456 (N.Y. Sup. Ct. June 13, 2014) (citing *Matter of Munoz v. Vega*, 756 N.Y.S.2d 47 (N.Y. App. Div. 2003)).

Ramsaroop's second § 3020-a hearing on the new "incompetence" charges took place over nine days, between February 15 and May 18, 2017. *Id.* ¶ 31; Doc. 40-2 at 2. On June 28, 2017, Ramsaroop was informed that the Arbitrator, Ira Lobel, recommended his termination. Doc. 50 ¶ 32. Lobel's decision is 34 pages long. Doc. 40-2 at 1-2. It explains that the hearing was conducted across nine separate dates, and that the parties had a full and fair opportunity to present oral and written evidence and examine witnesses. *Id.* The detailed decision discusses Ramsaroop's background over the course of his teaching career, his previous history of disciplinary charges, the current charges, the arguments of both parties, and evidence from the DOE and Ramsaroop. *See generally* Doc. 40-2. Lobel discussed each observation and each witness's testimony before ultimately concluding that, despite Ramsaroop's "knowledge of earth science or his dedication," Breier was "far more credible" than Ramsaroop and all of the charges were sustained, with the appropriate penalty being termination. *Id.* at 31-35.

On July 7, 2017, Ramsaroop filed an Article 75 appeal of that decision in New York State Supreme Court. Doc. 50 ¶ 33. Justice Arlene Bluth granted the defendants' motion to dismiss on the grounds that Ramsaroop was not as credible as Breier and the facts showed he could not improve his pedagogy. *Id.* ¶ 35. Accordingly, Justice Bluth denied Ramsaroop's appeal on January 19, 2018. *Id.* ¶ 35. In the instant action, Ramsaroop argues Justice Bluth, like Lobel, overlooked the fact that the DOE did not wait to find out whether he had improved his pedagogy before charging him with incompetence in the second § 3020-a action. *See id.*

### B.  Procedural History

Ramsaroop commenced this action *pro se* against the DOE, Shirley Miller, and UFT on June 23, 2020. Doc. 2. UFT was voluntarily dismissed on February 18, 2021. Doc. 30. Ramsaroop amended his complaint on May 6, 2021. Doc. 38. Defendants thereafter filed a motion to dismiss on May 28, 2021. Doc. 39.

The February 8 Order granted the DOE and Miller's motion to dismiss the action in its entirety.  Doc. 49.  However, the Court permitted Ramsaroop to replead the following claims:  (1) his equal protection claims under the United States and New York State constitutions, as well as his claims under the Age Discrimination in Employment Act (ADEA), New York State Human Rights Law (NYSHRL), and New York City Human Rights Law (NYCHRL); and (2) his retaliation claims under the First Amendment and New York State constitution.  Doc. 49.

The Court dismissed the remaining claims with prejudice.  *Id.*  The Court explained it would be futile for Ramsaroop to amend his claims against Miller, his claims under NYLL § 740, and his claims against the DOE alleging intentional and negligent infliction of emotional distress, negligence, fraud, breach of contract, due process violations, and NYCHRL and NYSHRL violations.  Doc. 49 at 18.  These claims were all time-barred, brought by or against an improper party, or defective for failure to satisfy New York Education Law § 3183's strict notice requirements.  *Id.* at 18 n.8, 22.

Ramsaroop filed the SAC on March 8, 2022.  Doc. 50.  Ramsaroop repleaded his claims alleging constitutional, federal, state, and municipal equal protection and due process violations, fraud, and breach of contract.  Doc. 50.  He also added three new claims alleging violations of the Supremacy Clause, a hostile work environment claim, and a stigma plus claim.  *See generally* Doc. 50.  On May 18, 2022, the DOE filed the instant motion.  Doc. 60.

## II.    LEGAL STANDARD

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Christie's Int'l PLC*, 699 F.3d at 145.  Additionally, a "district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013).  However, the Court is not required to credit "mere conclusory statements" or

"[t]hreadbare recitals of the elements of a cause of action." *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

"Because [Ramsaroop] is a *pro se* litigant, we read his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. NYS Dep't of Lab.*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even *pro se* plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Twombly*, 550 U.S. at 555. A *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation." *Iqbal*, 566 U.S. at 678. A complaint that "tenders naked assertion[s] devoid of further enhancement" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted); *see also Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (explaining "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law'") (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

## III.    DISCUSSION

### A.  Claims Against the DOE Previously Dismissed with Prejudice

The Court already considered and dismissed with prejudice several of Ramsaroop's claims against the DOE.  Doc. 49.  Notwithstanding the Court's directives, Ramsaroop repleaded some of these same claims in the SAC.  Those previously dismissed with prejudice included claims alleging fraud, breach of contract, and due process violations.  *Id.* at 22.  The claims previously dismissed as time-barred included discrimination claims under the NYSHRL and NYCHRL, which are subject to a one-year statute of limitations that had run by the time Ramsaroop originally filed this action.  *Id.* at 17-18.[4]  Accordingly, the Court declines to reconsider these claims.

### B.  Ramsaroop's Repleaded Claims Against the DOE

#### i.       Equal Protection Claims

The February 8 Order dismissed Ramsaroop's equal protection claims against the DOE for failure to state a claim.  *Id.* at 12.  In the FAC, Ramsaroop's only allegation regarding discrimination was that "the acts of Defendants in denying Plaintiff his [c]onstitutional right to a fair hearing by neutral arbitrator showed deliberate malice, bad faith, [and] discrimination due to [his] age . . . ."  Doc. 38  ¶ 42.  The Court held that these allegations were "conclusory and too speculative to survive a motion to dismiss" because the Court was "not able 'to draw the reasonable inference that the defendant is liable for misconduct' here."  Doc. 49 at 12.  The Court permitted Ramsaroop to amend his complaint to cure this defect.  *Id.* at 22.

In the SAC, Ramsaroop alleges that the DOE discriminated against him based on his age and national origin, in violation of the Equal Protection Clause.  Doc. 50 ¶¶ 62, 75, 85, 90.  Ramsaroop does not identify his national origin anywhere in the SAC.  *See*

---

[4] Ramsaroop was free to replead his NYSHRL and NYCHRL claims, but not against *this* defendant.  Doc. 49 at 22.  In the February 8 Order, the Court also explained that Ramsaroop's NYSHRL and NYCHRL claims against DOE would also be dismissed for failure to comply with the strict notice requirement of New York Education Law § 3183.  *Id.* at 17-18, 18 n.8.

*generally* Doc. 50.[5]  With respect to the issue of age discrimination, Ramsaroop claims that he was over the age of 50 and "treated differently at his school than teachers who were younger than he was."  Doc. 50 ¶ 85.  In addition, Ramsaroop alleges that "but for [his] reporting of school grade scrubbing, [his reporting of the students'] violence, and his age, he would not have been terminated."  *Id.* ¶¶ 75, 86.

The DOE argues Ramsaroop's equal protection claims must be dismissed because the allegations in the SAC are conclusory and speculative and, therefore, are still insufficient to survive a motion to dismiss.  Doc. 61 at 20-21.  Specifically, it argues Ramsaroop made "solely" conclusory statements, "fail[ed] to identify his race and national origin," "fail[ed] to state any necessary specifics, including the names of potential comparators" who were similarly situated, and "failed to allege enough details to adequately show [that his] age was a but for factor [in the decision to terminate him]." *Id.*  Highlighting contradictory allegations in the SAC, it also contends Ramsaroop's age discrimination claims undercut any claims of First Amendment retaliation and other forms of discrimination.[6]  *Id.* at 21.

The Court agrees.[7]  A plaintiff can establish a *prima facie* case of discrimination under the Equal Protection Clause by showing that:  (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination based on his membership in that protected class.  *Shands v. Lakeland Cent. Sch. Dist.*, No. 15 Civ. 4260 (KMK), 2018 WL 3315738, at *11 (S.D.N.Y. July 5, 2018) (describing the *prima*

---

[5] In the SAC, Ramsaroop pleaded that he was awarded a college scholarship by the government of Trinidad and Tobago and completed his B.A. in Jamaica.  Doc. 50 ¶ 13.  However, he does not specifically plead his national origin.  *See generally* Doc. 50.

[6] The DOE compares Ramsaroop's First Amendment retaliation and discrimination claims on the basis of national origin to the allegations set forth in paragraph 88 of the SAC, where Ramsaroop asserts he would not have been terminated "but for his age."  Doc. 61 at 21 (citing Doc. 50 ¶ 88).

[7] The Court will address the DOE's last point on First Amendment retaliation separately.

*facie* elements for equal protection claims brought under 41 U.S.C. § 1983), *aff'd* in *Shands v. Lakeland Cent. Sch. Dist.*, 771 F. App'x. 121 (2d Cir. 2019).

As an initial matter, Ramsaroop failed to state a cognizable claim for discrimination based on national origin. In the SAC, Ramsaroop neither identified his national origin, which is required to establish he is a member or a protected class, nor pleaded facts sufficient to show that his termination occurred under circumstances giving rise to an inference of discrimination. *See generally* Doc. 50. His only allegation to that effect was that the DOE's "conduct by discriminating against Plaintiff based on his . . . national origin violated Plaintiff's Fourteenth [A]mendment rights . . . under § 1983." Doc. 50 ¶ 62. Thus, this allegation remains purely conclusory and too speculative to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678.

Ramsaroop also failed to state a cognizable claim for age discrimination in violation of the equal protection clause. "Age is not a suspect classification under the Equal Protection Clause." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 63 (2000). Therefore, "age-based discrimination does not offend equal protection 'if the age classification in question is rationally related to a legitimate [government] interest.'" *Neary v. Greunberg*, 730 F. App'x. 7, 9-10 (quoting *Kimel*, 528 U.S. at 83). "[W]hen conducting rational basis review [courts] will not overturn . . . government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the government's actions were irrational." *Id.* at 10 (quoting *Kimel*, 528 U.S. at 84) (internal quotations omitted). Thus, Ramsaroop's age discrimination claim can only survive a motion to dismiss if the amended complaint pleads facts sufficient to support a reasonable inference that the DOE's treatment of people over the age of 50 was "so unrelated to the achievement of any combination of legitimate purposes that [this Court] can only conclude that [the DOE's] actions were irrational." *Id.*

11

The facts alleged in the SAC are not sufficient to support that inference.  Notably, neither party cites to any policy or practice wherein the DOE classified employees on the basis of age.  *See generally* Docs. 50, 61.  The only specific allegations of disparate treatment are:  (1) that Ramsaroop "[was] over 50 years of age, and was treated differently at his school than teachers who were younger than he was," and (2) "[c]olleagues at his school who did not speak up, did not file Grievances or Appeals, and/or were younger than Plaintiff had no disciplinary charges filed against them."  Doc. 50 ¶¶ 46, 85.  These allegations are conclusory and speculative.  *See Iqbal*, 556 U.S. at 678.  Without more, the Court cannot reasonably infer that the DOE terminated Ramsaroop based on his age or, if it did, that this form of discrimination was so unrelated to the achievement of legitimate government purposes that it constituted a violation of the Equal Protection Clause.  *See Neary*, 730 F. App'x. at 7, 9-10.

For these reasons, Ramsaroop failed to establish a *prima facie* case of discrimination.  Accordingly, the Court's analysis ends here and does not require further application of the burden-shifting framework articulated in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[8]  *See Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (applying the *McDonnel Douglas* framework to discrimination claims brought under the ADEA).

### ii.       First Amendment Retaliation Claims

The February 8 Order also dismissed Ramsaroop's First Amendment retaliation claims against the DOE.  Doc. 49 at 17.  The Court explained that Ramsaroop's conclusory allegations did not come close to establishing that he was speaking on a matter of public concern, as his grievance process related solely to his employment and thus was not the kind of speech subject to constitutional protection against retaliation.

---

[8] This same standard also applies to discrimination claims brought under the NYSHRL and NYCHRL.  *See Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010).  Thus, even if those claims were not time-barred or dismissed for non-compliance with New York Education Law § 3183's notice requirement, they would also be dismissed for failure to state a claim.

Doc. 49 at 16; *see Garcetti v. Ceballos*, 547 U.S. 410, 417-21 (2006); *see also Healy v. City of New York Dep't of Sanitation*, 286 F. App'x 744, 745-46 (2d Cir. 2008).  Further, regarding his refusal to change the grades of failing students, the Court looked to the "content, form, and context" of the statement, concluding Ramsaroop had not sufficiently alleged that he was speaking as a private citizen on a matter of public concern.  *Id.* at 17 (citing *Norton*, 565 F. App'x 31, 33-34 (2d Cir. 2014)).

In the SAC, Ramsaroop argues that the DOE retaliated against him by terminating him after he won his grievance arbitration against Principal Breier and after he refused to modify students' grades, in violation of the First Amendment.  Doc. 50 ¶¶ 45, 51. Regarding the latter, Ramsaroop asserts that, in refusing to modify the students' grades, "he spoke as a citizen about scrubbing grades, a topic which is certainly a matter of public concern and interest."  *Id.* ¶ 50.  He further adds that because his job responsibilities "did not include refusing to scrub grades," his "advocacy was separate and apart from any of his job responsibilities."  *Id.*

The DOE argues Ramsaroop's First Amendment retaliation claims should also be dismissed for failure to state a claim.  Doc. 61 at 13.  It contends that Ramsaroop solely offers conclusory statements and, therefore, failed to remedy the defects in the FAC.  *Id.* at 13-14.  Additionally, the DOE argues this claim is time-barred.  *Id.* at 14.  It emphasizes that this claim is based, at least in part, on Ramsaroop's opposition to the Academy's grading policy, which he voiced to Principal Breier in 2014.  *Id.*  However, Ramsaroop did not file his initial complaint until June 23, 2020, five years after the speech at issue.  *Id.* at 14-15.

The statute of limitations for constitutional claims brought under § 1983 for an action arising in New York is three years.  *See Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 1995).  The cause of action for a § 1983 claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of his action."  *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002); *see Pinaud v.*

*County of Suffolk*, 52 F.3d 1139, 1156-57 (2d Cir. 1995).  While Ramsaroop may have voiced his opposition to the Academy's grading policy in 2014, he was not terminated by the DOE until June 28, 2017.  Doc. 50 ¶ 30.  Since the 2017 termination is the alleged retaliatory act underlying Ramsaroop's § 1983 claim, he did not have reason to know of the incident that formed the basis of his claim until that time.  Therefore, the statute of limitations did not begin to run until June 28, 2017, and it ran until June 28, 2020.  Ramsaroop initially filed this action on June 23, 2020, five days before the statute of limitations expired.  Doc. 2.  Accordingly, contrary to the DOE's contentions, Ramsaroop's First Amendment retaliation claim is not time-barred.

However, the Court agrees that Ramsaroop failed to remedy the defects of his First Amendment retaliation claims.  As explained in the February 8 Order, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions" to ensure that employees do not "contravene governmental policies or impair the proper performance of governmental functions."  Doc. 49 at 14 (quoting *Garcetti*, 547 U.S. at 418-19).  A government entity in the form of an "employer charged with providing such essential services as public safety and education, rather than a sovereign governing its citizens, . . . has greater leeway under the Constitution to control employees' speech that threatens to undermine its ability to perform its legitimate functions."  *Jackler v. Byrne*, 658 F.3d 225, 234 (2d Cir. 2011) (internal quotation marks and citation omitted).[9]  However, although government employees have diminished speech rights as compared with private citizens, "a public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment."  *Hale v. Mann*, 219 F.3d 61, 70 (2d Cir. 2000) (quoting *Connick v. Myers*, 461 U.S. 138, 140 (1983)).  Accordingly, in public

---

[9] Claims of retaliation for the exercise of free speech under Article I, § 8 of the New York State Constitution are governed by the same principles applicable to First Amendment claims.  *Dotson v. Farrugia*, 11 Civ. 1126 (PAE), 2012 WL 996997, at *9 (S.D.N.Y. Mar. 26, 2012).

employee freedom of speech cases, courts must achieve a balance between the interest of the public employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

Courts employ a two-step approach to evaluate whether the First Amendment protects employee speech from retaliation. First, the Court inquires "whether the employee spoke as a citizen on a matter of public concern." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (internal quotation marks and citation omitted). If the answer to this question is no, then "the employee has no First Amendment cause of action based on . . . [his] employer's reaction to the speech." *Garcetti*, 547 U.S. at 418. If the answer is yes, the Court must then decide "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Ruotolo*, 514 F.3d at 188 (internal quotation marks and citation omitted); *see also Garcetti*, 547 U.S. at 418.

The first factor, "whether the employee spoke as a citizen on a matter of public concern," consists of two subcomponents: "(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke 'as a citizen' rather than solely as an employee." *Jackler*, 658 F.3d at 235. Speech is of public concern if it relates to political, social, or other community concerns, rather than an employee's personal concerns. *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (citing *Connick*, 461 U.S. at 146); *Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (same). Generally, "discussion regarding current government policies and activities is perhaps the paradigmatic matter of public concern." *Harman v. City. of New York*, 140 F.3d 111, 118 (2d Cir. 1998) (citation and internal punctuation omitted). If the government entity cannot show that such speech would impact or disrupt the government employer's functions, then it may receive First Amendment protection. *See id.* Matters of public concern also include "speech aimed at uncovering wrongdoing or breaches of the public

trust." *Wrobel v. Cnty. of Erie*, 692 F.3d 22, 31 (2d Cir. 2012) (quoting *Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993)).

Importantly, however, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also Healy*, 286 F. App'x at 745-46 (holding that speech is not protected where it arises "in the course of . . . official job duties"). The Second Circuit has held that determining whether the employee's speech "is on a matter of public concern" is to be determined by the Court as "a question of law." *Jackler*, 658 F.3d at 235 (citing *Connick*, 461 U.S. at 148 n.7). While "[t]here is no categorical approach," courts evaluate the "content, form, and context of a given statement[.]" *Norton*, 565 F. App'x at 33-34 (2d Cir. 2014) (quoting *Johnson*, 342 F.3d at 112). At the center of that inquiry is "whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo*, 514 F.3d 184, 189 (2d Cir. 2008) (citing *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)).

The facts alleged in the SAC fail to establish that Ramsaroop spoke either as a citizen, rather than an employee, or on a matter of public concern—let alone both. *See id.* As an initial matter, Ramsaroop's disagreement with the school's grading policy under Principal Breier directly related to his official job duties as a teacher at the Academy. *See Garcetti*, 547 U.S. at 421; *see also Healy*, 286 F. App'x at 745-46. Merely asserting that his job responsibilities "did not include refusing to scrub grades" and, therefore, that his "advocacy was separate and apart from any of his job responsibilities" is insufficient to establish that he spoke as a citizen rather than solely an employee. *See Jackler*, 658 F.3d at 235; *Garcetti*, 547 U.S. at 421. Likewise, Ramsaroop's grievance request and arbitration concerning Breier's 2014 negative performance review and "Ineffective" evaluation rating of Ramsaroop related solely to Ramsaroop's official duties and performance as a teacher. *See* Doc. 49 at 16. Nothing in the SAC establishes that

Ramsaroop was speaking as a citizen rather than solely as an employee on this issue either.  *See Jackler*, 658 F.3d at 235.  Accordingly, neither Ramsaroop's grievance request and arbitration that followed, nor his refusal to comply with the school's grading policy, are the kind of speech subject to constitutional protection against retaliation under the First Amendment.  *See Garcetti*, 547 U.S. at 421; *Healy*, 286 F. App'x at 745-46.

Even if it were, Ramsaroop's only attempt to establish that he spoke on a matter of public concern is to assert that "scrubbing grades [is] a topic which is certainly a matter of public concern and interest."  Doc. 50 ¶ 50.  Just as in the FAC, nothing in the SAC explains how this is a matter of public concern.  *See generally* Doc. 50; *see Johnson*, 342 F.3d at 112 (citing *Connick*, 461 U.S. at 146).  At best, this assertion attempts to convert "a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run," which the Second Circuit expressly held is insufficient to advance a public purpose and thus qualify for constitutional protection.  *Ruotolo*, 514 F.3d 184, 190 (2d Cir. 2008).  Accordingly, Ramsaroop has no First Amendment cause of action based on the DOE's alleged reaction to his speech.  *See Garcetti*, 547 U.S. at 418.

### iii.    ADEA Claims

The ADEA also provides relief for age-based discrimination and retaliation.  29 U.S.C. § 623 (protecting qualified employees 40 years of age and older from discrimination on the basis of age in hiring, promotion, discharge, compensation, or terms, conditions or privileges of employment).  The February 8 Order dismissed Ramsaroop's ADEA claims against the DOE for failure to state a claim.  Doc. 49 at 12. In the SAC, Ramsaroop repleaded these claims.  Doc. 50 ¶¶ 45, 46, 85-86, 88.  The DOE argues that Ramsaroop's ADEA claims are conclusory and speculative and, therefore, are still insufficient to survive a motion to dismiss.  Doc. 61 at 20-22.

The Court agrees.  The *prima facie* elements of an ADEA claim are the same as those for an Equal Protection claim.  *Ninying v. New York City Fire Department*, 807 F.

App'x. 112, 114 (2d Cir. 2020) (listing the elements of an ADEA discrimination claim: (1) the plaintiff is a member of a protected class; (2) is qualified for his position; (3) suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination based on his membership in that protected class).  While the facts alleged in the SAC are sufficient to establish the first three elements of a *prima facie* case, they fail to satisfy the fourth:  that Ramsaroop's termination by the DOE occurred under circumstances giving rise to an inference of discrimination based on his age.

As to the first element, Ramsaroop alleges that he was over 50 years old when he was terminated by the DOE, which is sufficient to establish that he is a member of a protected class under the ADEA.  Doc. 50 ¶ 85; *see* 29 U.S.C. § 623.

With regard to the second element, Ramsaroop alleges that he possessed the requisite college and post-graduate degrees, teaching experience, and certifications to serve as a teacher with the DOE, which is sufficient to establish that he is qualified for his position.  Doc. 50 ¶¶ 13-15.  In this Circuit, "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer."  *See Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001).  Thus, the plaintiff need only show that he "possesses the basic skills necessary for performance of [the] job."  *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation marks and citation omitted).  It follows that, "especially where discharge is at issue and the employer already hired the employee, the inference of minimal qualification is not difficult to draw."  *See Slattery*, 248 F.3d at 92.  Here, reading Ramsaroop's supporting papers liberally and interpreting them to raise the strongest argument they suggest, Ramsaroop has adequately amended his complaint to this effect. *See Burgos*, 14 F.3d at 790; *Jackson*, 709 F. Supp. 2d at 224 (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  Indeed, he possessed these qualifications when the DOE assigned him to teach at the Academy in 2008.  Doc. 50 ¶ 15.

As to the third element, Ramsaroop alleges that he was terminated, which is sufficient to establish that he suffered an adverse employment action.  Doc. 50 ¶¶ 85-86; *see Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (explaining an "adverse employment action" includes "a materially adverse change in the terms or conditions of employment," such as termination) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

As to the fourth element, Ramsaroop seeks to raise the inference of discrimination by showing that the DOE treated younger, similarly-situated employees differently than they treated him.  Doc. 50 ¶ 85.  Although it is not the only approach available to plaintiffs, "showing that the employer treated a similarly-situated employee differently is 'a common and especially effective method' of establishing a *prima facie* case of discrimination."  *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (quoting *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)).  For this analysis, "[e]mployees used as comparators . . . need not be identically situated, but only must be similarly situated in all material respects."  *Berube v. Great Atlantic & Pacific Tea Co., Inc.*, 348 F. App'x. 684, 686 (2d Cir. 2009) (citing *McGuinness*, 263 F.3d at 53-54).  "What constitutes 'all material respects' . . . varies somewhat from case to case," but "must be judged based on (1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness."  *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000) (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir.1999)).

As stated above, the only specific allegations of disparate treatment were:  (1) that Ramsaroop "[was] over 50 years of age, and was treated differently at his school than teachers who were younger than he was," and (2) Ramsaroop's "[c]olleagues at his school who did not speak up, did not file [g]rievances or [a]ppeals, and/or were younger

than Plaintiff had no disciplinary charges filed against them." Doc. 50 ¶ 46, 85. Critically, Ramsaroop does not identify any potential comparators or allege facts sufficient to support a finding that such younger employees were, in fact, similarly-situated in any material aspects, or that they were subject to the same workplace standards. *See generally* Doc. 50. Nor does Ramsaroop allege facts showing that the DOE's conduct was of comparable seriousness to that of his comparators who received favorable treatment. *See generally* Doc. 50. Thus, even when construed liberally, the facts alleged in the SAC are insufficient to raise the inference of discrimination. Accordingly, Ramsaroop's ADEA discrimination claims against the DOE remain too conclusory and speculative to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *see also Triestman*, 470 F.3d at 477.

Next, Ramsaroop broadly alleges that the DOE retaliated against him for his age and "seniority," also in violation of the ADEA. Doc. 50 ¶¶ 45, 88.[10] To establish a *prima facie* case of retaliation under the ADEA, a plaintiff must allege facts sufficient to prove: "(1) the plaintiff was engaged in an activity protected under the ADEA; (2) the employer was aware of the plaintiff's participation in the protected activity; (3) the plaintiff was subject to an adverse employment action; and (4) there is a nexus between the protected activity and the adverse action taken." *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 465 (2d Cir. 1997). The DOE argues the retaliation claims should be dismissed because Ramsaroop failed to allege that he engaged in a protected activity. Doc. 61 at 22.

The Court agrees. Not only does Ramsaroop fail to plead facts establishing he engaged in a protected activity, but the allegations in the SAC also fail to establish that there was a nexus between such a protected activity and his termination. The only

---

[10] The language in the SAC stating this claim nearly incomprehensible. Ramsaroop's does not explicitly state what law the DOE broke when it allegedly "violated his rights because of his age by retaliating against him." Doc. 50 ¶ 88. While Ramsaroop does not explicitly say what law was broken, the Court will read this allegation as raising an ADEA retaliation claim because the paragraph alleging retaliation in connection with Ramsaroop's age is located in the section of the SAC labeled "Age Discrimination," in which he alleges an ADEA discrimination claim.

allegation in the SAC that tends to support this claim is that the DOE "violated [Ramsaroop's] rights because of his age by retaliating against him for . . . the school administration placing unwarranted disciplinary letters in his personnel file, fabricating defamatory and untrue complaints about his behavior and then terminating him without any valid reason but for his age."  Doc. 50 ¶ 88.  Thus, even when read liberally to raise the strongest arguments they suggest, Ramsaroop's allegations are purely conclusory and too speculative to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *see also Triestman*, 470 F.3d at 477.

Because Ramsaroop failed to establish a *prima facie* case, the Court need not further analyze this claim under the *McDonnel Douglas* burden-shifting framework.  *See* 411 U.S. 792, 802 (1973); *Wanamaker*, 108 F.3d 462, 129 (2d Cir. 1997) (applying the framework to retaliation claims brought under the ADEA).

### C.  New Claims Pleaded for the First Time in the SAC

In addition to repleading claims dismissed by the Court in the February 8 Order, Ramsaroop raised three new claims in the SAC.  For the following reasons, these claims are also dismissed.

### i.  Supremacy Clause Violation

First, Ramsaroop alleges that the DOE violated the Supremacy Clause and that he "has no adequate remedy at law for the continuing deprivation of his statutory rights under the First Amendment as secured by the Supremacy Clause."  Doc. 50 ¶¶ 57-59. The DOE argues this claim should be dismissed for two reasons:  (1) Ramsaroop has not pleaded facts specifying which of the DOE's actions violated the Supremacy Clause; and (2) the Supreme Court has ruled that "the Supremacy Clause is not the source of any federal rights, and certainly does not create a cause of action."  Doc. 61 at 7, 15.  "Rather, it instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court."  Doc. 61 at 15 (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 324-25 (2015) (internal quotations and citations omitted)).

The Court agrees.  The Supremacy Clause provides:  "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const., art. VI, cl. 2.  The Supreme Court has clearly established that this constitutional provision does not confer a private right of action.  *Armstrong*, 575 U.S. at 323-25 (explaining neither the framers' original intent nor the structure of the Constitution itself suggest that the Supremacy Clause provides a private right of action).

Ramsaroop has no private cause of action under the Supremacy Clause.  Nor does he allege a conflict between state and federal law prompting the Court to invoke the application of that clause in deciding the instant motion.  Accordingly, this claim is dismissed.

### ii.    Hostile Work Environment Claim

Second, Ramsaroop alleges that the DOE subjected him to a hostile work environment.  Doc. 50 ¶¶ 19, 45.[11]  To establish a hostile work environment claim under federal law, a plaintiff must show that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment."  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (2011) (citing *Harris v. Forklift Syst., Inc.*, 510 U.S. 17, 21 (1993)).  Additionally, a plaintiff must demonstrate not only that he found the environment offensive or abusive, but also that a reasonable person would also have

---

[11] In the SAC, Ramsaroop does not explicitly state what law the DOE violated when it allegedly subjected him to a hostile work environment.  Doc. 50 ¶ 19, 45.  Reading the SAC liberally and interpreting it to raise the strongest possible argument it suggests, the Court will read this claim as alleging that the DOE subjected Ramsaroop to a hostile work environment in violation of the Equal Protection Clause of the Fourteenth Amendment, which he brings under 41 U.S.C. § 1983.  As explained in the FAC and in this opinion, Ramsaroop's NYCHRL and NYSHRL claims against the DOE are time-barred; therefore, the Court will not read the SAC as raising a hostile work environment claim under either of these laws.

found the environment be "hostile" or "abusive."  *Id.* (citing *Harris*, 510 U.S. at 17).  This requires the incidents complained of be "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."  *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (citing *Harris*, 510 U.S. at 22).  Courts must look at the totality of the circumstances to determine whether an environment is "hostile" or "abusive" and should consider the following non-exhaustive list of factors in its analysis: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's "work performance."  *Id.* (citing *Harris*, 510 U.S. at 23).

In the SAC, Ramsaroop alleges that "[t]he circumstances and facts in this case show that [the DOE's] behavior constituted the creation of a hostile work environment based upon Plaintiff's age and seniority at [the Academy]."  Doc. 50 ¶ 45.  Ramsaroop also claims that, in addition to pursuing relevant additional graduate studies, he filed for a one-year sabbatical during the 2015-2016 academic year in order to "escape the hostile work environment" at the Academy.  Doc. 50 ¶ 19.

The DOE argues that Ramsaroop provides insufficient details for his hostile work environment claim to survive a motion to dismiss.  Doc. 61 at 16.  First, it argues that Ramsaroop does not support his claim with factual allegations that illustrate sufficiently severe or pervasive discriminatory intimidation, ridicule or insult.  *Id.* at 15-16.  Next, the DOE contends that Ramsaroop failed to explain why his claim alleging retaliation based on his "seniority" at the school could not be resolved under the collective bargaining agreement.  *Id.* at 15 n.2.  Lastly, to the extent the Court can read the SAC to allege claims of *retaliatory* hostile work environment, the DOE argues that Ramsaroop's claims also fail for lack of detail.  *Id.* at 16.

The allegations in the SAC do not come close to supporting a hostile work environment claim based on Ramsaroop's age or his seniority at the Academy.  Nor are

they sufficient to plead a retaliation claim for Ramsaroop's refusal to change students' grades or for winning his grievance arbitration against Breier.  Ramsaroop blithely claims the DOE created a hostile work environment, but nowhere does he describe a single incident—let alone a pattern of conduct—or conditions that show that his time at the Academy was "permeated with discriminatory intimidation, ridicule, and insult" to a degree that rises to the level of "abusive" or "offensive."  *See Harris*, 510 U.S. at 17, 21-23.  Accordingly, the Court finds Ramsaroop's allegations are purely conclusory and too speculative to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557; *see also Triestman*, 470 F.3d at 477.

### iii.    Stigma-Plus Procedural Due Process Claim

Third, Ramsaroop asserts a stigma-plus claim.  Doc. 50 ¶¶ 69-83.  In the SAC, he claims that the DOE violated his Fourteenth Amendment right to due process.  *Id.* ¶¶ 71, 73.  Specifically, he claims that the DOE made false allegations that resulted in the placement of a "problem code" on his personnel file and his termination, thereby damaging his reputation as a teacher and depriving him of his tangible interest in obtaining government employment, without sufficient opportunity for recourse.  *Id.* ¶¶ 71, 72, 73.

Courts examine procedural due process claims in two steps:  "the first asks whether there exists a liberty or property interest which has been interfered with by the State," and "the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  When analyzing procedural due process violations, the threshold issue is always whether the plaintiff possessed a valid property or liberty interest.  *See White v. City*, 13 Civ. 7156 (ER), 2014 WL 4357466, at *11 (S.D.N.Y. Sept. 3, 2014) (citing *Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 427-28 (2d Cir. 2011)).

The Supreme Court clearly established that damage to an individual's reputation is not "by itself sufficient to invoke the procedural protection of the Due Process Clause."

*Paul v. Davis*, 424 U.S. 693, 701 (1976).  Rather, to invoke such protection, a stigma-plus claim requires showing an "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)."  *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (citing *Paul*, 424 U.S. at 701-02; *Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)).

For the reasons explained below, Ramsaroop's stigma-plus claim cannot survive the DOE's motion to dismiss.  Even if Ramsaroop alleged facts sufficient to show that the DOE deprived him of a cognizable property interest or liberty interest, his stigma-plus claim fails because he was afforded constitutionally adequate due process.

### 1.      Property Interest

The Constitution protects property rights, but does not create them.  Rather, property rights are defined "by existing rules or understandings that stem from an independent source," such as "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996) (citation omitted).  Thus, to establish a cognizable property interest subject to the protections of the Due Process Clause, a plaintiff must have "more than an abstract need or desire for [the property]," he must, "instead, have a legitimate claim of entitlement to it under state or federal law . . . ." *Rivera v. Cmty. Sch. Dist. Nine*, 145 F. Supp. 2d 302, 306 (S.D.N.Y. 2001) (citing *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996)).  Therefore, here, in order to assert that he had a valid property interest, Ramsaroop must show that, under New York or federal law, he "had a constitutionally-protected 'legitimate claim of entitlement'" to employment with the DOE.  *White*, 2014 WL 4357466, at *11.

Ramsaroop was employed by the DOE from September 2001 until his termination in June 2017.  Doc. 50 ¶¶ 14, 15, 32.  Ramsaroop asserts that he was tenured with the DOE for twelve years at the time of his termination.  *Id.* ¶¶ 11, 14.  He further alleges that he had "permanent certification as a grade 7-12 earth science teacher, with an extension

for middle school science." *Id.* ¶ 14, 15.  Further, the record reflects that the DOE terminated Ramsaroop using the same procedures as it does with all tenured teachers, pursuant to N.Y. Educ. Law § 3020-a.  Doc. 50 ¶ 31; Doc. 40-2 at 2.  However, nowhere in the SAC or his memorandum in opposition to the instant motion does Ramsaroop explicitly tie the fact that he was tenured to his stigma-plus claim as required to implicate a constitutionally protected, legitimate claim of entitlement in continued employment with the DOE.  Doc. 50 ¶ 14; *see Rivera*, 145 F. Supp. 2d at 306 (citing *Finley*, 79 F.3d at 1296); *see also* Fed. R. Civ. P. 12(b)(6).  Nevertheless, construing the SAC liberally, the Court will assume that Ramsaroop sufficiently pleaded facts establishing that his status as a tenured teacher at the DOE conferred upon him a cognizable property interest in continued employment at the DOE.[12]  *See Burgos*, 14 F.3d at  790; *Jackson*, 709 F. Supp. 2d at 224 (citing *McEachin*, 357 F.3d at 200).

## 2.    Procedural Rights

Even if Ramsaroop adequately alleged that the DOE deprived him of a protected property or liberty interest, his stigma-plus claim would nonetheless fail because he was afforded adequate due process to clear his name.

The second part of the procedural due process analysis "asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided." *Rivera*, 145 F. Supp. 2d at 306 (internal quotation marks and citation omitted); *see also Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881-82 (2d Cir. 1996).  "Due process requires, as a general matter, an opportunity to be heard at a meaningful time and in a meaningful manner." *Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 455 (S.D.N.Y. 2010) (citations and internal quotation marks omitted), *aff'd sub nom. Ebewo v. Fairman*, 460 F. App'x 67 (2d Cir. 2012) (summary

---

[12] Ramsaroop's allegations may also be construed to assert deprivation of a cognizable liberty interest. Because the Court concludes that Ramsaroop has sufficiently alleged deprivation of a property interest, it will not proceed with the liberty interest prong of the stigma-plus analysis. *See Paul*, 424 U.S. at 701-702.

order).  A "stigma plus" due process claim cannot survive a motion to dismiss merely because a government employer said something allegedly stigmatizing or false about the plaintiff; rather, the claim must also be based on a denial of adequate processes to contest the allegedly damaging statement.  *Segal*, 459 F.3d 207, 214 (2d Cir. 2006) (explaining "the availability of an adequate, reasonably prompt, post-termination name-clearing hearing is sufficient to defeat a stigma-plus claim").  As the Second Circuit explained in *Segal*:

> Because stigma plus is a species within the phylum of procedural due process claims . . . it is not enough that the plaintiff has demonstrated the deprivation of [his] liberty interest; in order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that [his] liberty was deprived without due process of law.  Stated differently, the availability of adequate process defeats a stigma-plus claim.

*Id.* at 213 (citation omitted).

Ramsaroop argues that he was denied adequate opportunity to clear his name after his various disciplinary citations because he was not given the chance to demonstrate improvement in his pedagogy, which he made during his sabbatical, before the "problem code" was applied to his file and before he was terminated for incompetence.  *See generally* Doc. 50 ¶¶ 25-35, 72, 75.  In the SAC, Ramsaroop explains that he requested the sabbatical not only to escape the allegedly hostile work environment at the Academy, but also to take classes that would help him improve his pedagogy, specifically his "classroom management techniques."  *Id.* ¶ 19.  Citing the timeline of his sabbatical and subsequent termination, however, Ramsaroop contends this shows that the DOE "never intended on giving [him] a chance to improve his pedagogy."[13]  *Id.* ¶¶ 25, 35.

---

[13] In a letter, which Breier gave to Ramsaroop on June 22, 2015, during his final TIP meeting, Breier wrote, "I hope that you endeavor to ensure that you focus on the areas of improvement noted above during your sabbatical."  *Id.* ¶ 25.  On September 1, 2016, the day Ramsaroop returned to the Academy after completing his sabbatical, he was notified of the "problem code" applied to his personnel file and immediately re-assigned to PS-007 pending resolution of the § 3020-a charges, which ultimately resulted in his termination.  *Id.* ¶ 27.  Ramsaroop argues that this shows that the DOE terminated him for failure to meet their performance standards without "wait[ing] to find out if [he] had improved his pedagogy or not."  *Id.* ¶¶ 25, 35.

Ramsaroop emphasizes that he was denied the opportunity to prove to the DOE that he had improved his teaching abilities during his year-long sabbatical. *Id.* ¶ 78. Additionally, he also alleges that both the arbitrator in his § 3020-a hearing for incompetence in 2017 and the judge who presided over his Article 75 appeal in New York County Supreme Court in 2018 neglected to consider the fact that he was deprived of the opportunity to demonstrate improvement after returning from his one-year sabbatical. *Id.* ¶¶ 33, 35.

The DOE argues that, even if Ramsaroop stated a cognizable stigma-plus claim, his claim cannot survive a motion to dismiss because he was afforded adequate due process to clear his name. Doc. 61 at 19-20. Specifically, the DOE emphasizes that Ramsaroop had the opportunity to argue his case in the § 3020-a hearing and to challenge the outcome of his § 3020-a proceedings in state court via an Article 75 appeal. *Id.* at 19.

The Court agrees. The Second Circuit has clearly established that "the availability of an adequate post-deprivation" remedy defeats a stigma plus claim. *Segal*, 459 F.3d at 214. Ramsaroop had the opportunity to challenge his termination by filing an Article 75 appeal in state court, and he availed himself of that opportunity. Doc. 50 ¶ 31, 33. Therefore, the question before this Court is whether the Article 75 appeal was constitutionally adequate. *See Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 Civ. 1847 (NSR), 2019 WL 3456678, at *8 (S.D.N.Y. July 30, 2019).

Generally, courts consider three factors in answering this question: "[f]irst, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As to the first factor, there is no question that Ramsaroop's private interest in continuing his long-term career as a teacher with the DOE was substantial. *See Barrer-Cohen*, 2019 WL 3456678, at *8 (citing *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*,

167 F.3d 784, 789 (2d Cir. 1999).  Accepting Ramsaroop's allegation that he was tenured at the time of his termination, Ramsaroop had a private interest in his reputation and in his right to continued employment at the DOE.[14]  *Codd v. Velger*, 429 U.S. 624, 627-28 (1977).

As to the second factor, the risk of erroneous deprivation of such interest is that "false charges against the plaintiff will go unrefuted and that his name will remain stigmatized." *Patterson v. City of Utica*, 370 F.3d 332, 336 (2d Cir. 2004).  As to the third factor, "the government interest at stake in a stigma-plus claim is its ability to execute and explain its personnel decisions quickly." *Segal*, 459 F.3d at 215.  This interest is stronger when the employee is at-will rather than tenured. *Id.*

Here, there was sufficient due process because there was a low risk that false charges against Ramsaroop would go unrefuted.  The § 3020-a proceeding conducted prior to Ramsaroop's termination guaranteed him the opportunity to refute any false allegations of incompetence.  Specifically, he had the opportunity to identify and describe for the arbitrator the exact improvements he made to his pedagogy during his sabbatical and to explain how those improvements would remediate the DOE's concerns about his competence, at least to a degree that could justify removing the "problem code" from his file or preclude his termination altogether. *See Blythe v. City of New York*, 963 F. Supp. 2d 158, 175 (E.D.N.Y. 2013) (explaining plaintiff had a full and fair opportunity to litigate her due process claims in a § 3020-a hearing and Article 75 appeal).  Moreover, Ramsaroop had a full and fair opportunity to litigate the adequacy of his disciplinary proceedings conducted pursuant to § 3020-a, including the outcome, through his Article 75 appeal in state court.

The Court recognizes Ramsaroop's frustration over the fact he was not given an opportunity to demonstrate what, if any, improvements he made to his teaching abilities

---

[14] *See supra* Section C(iii)(1).

during his sabbatical.  Nonetheless, the recourse opportunities afforded to him were constitutionally sufficient.  Ramsaroop's stigma-plus claim is therefore dismissed.

### D.  Dismissal With Prejudice

Lastly, the DOE moves to have all of Ramsaroop's claims dismissed with prejudice.  The DOE emphasizes that Ramsaroop had the chance to amend his complaint twice, and thus that he had the advantage of an Opinion and Order from this Court setting forth the defects in his claims.  Doc. 61 at 23.  It also argues Ramsaroop should not be granted leave to amend his complaint again, notwithstanding that he is a *pro se* plaintiff, because even a liberal reading of the complaint suggests he will be unable to state a claim.  *Id.*  Accordingly, the DOE asserts that allowing Ramsaroop to amend his complaint for a third time is unlikely to be productive.  *Id.*

The Court agrees.  The Court has now twice highlighted the precise defects in Ramsaroop's pleading and provided him with an opportunity to address those defects. *See* Doc. 49.  It would thus be futile for Ramsaroop to amend his discrimination and retaliation claims a third time.  It would also be futile for Ramsaroop to amend the new claims he raised in the SAC.  Ramsaroop's Supremacy Clause violation claim cannot be cured of its deficiencies because the Supremacy Clause does not create a private cause of action.  Further, while this was the Court's first opportunity to rule on Ramsaroop's hostile work environment claim, granting him leave to amend on this point would be unproductive.  The Court has afforded Ramsaroop two opportunities to properly plead his claims.  In none of his three complaints does Ramsaroop plead facts that have any promise of  supporting a hostile work environment claim.  Lastly, it would be futile for Ramsaroop to attempt to amend his stigma-plus claim given the numerous opportunities that Ramsaroop was given to challenge the DOE's employment actions—before an arbitrator, a New York Supreme Court judge, and this Court.

**IV.    CONCLUSION**

For the reasons discussed above, the DOE's motion to dismiss with prejudice is GRANTED.  The clerk of Court is respectfully directed to terminate the motion, Doc. 60, and close the case.

It is SO ORDERED.

Dated:    January 2, 2023
             New York, New York

_____
            Edgardo Ramos, U.S.D.J.